JOSEPH FERGUSON *vs.* JOSEPH KUMLER.

July 12, 1878.

**Action for recovery of real property, defined.**—The phrase, "action for the recovery of real property," as used in Gen. St. *c.* 75, was intended to refer to an action in the nature of the common-law ejectment, which, though in form an action for the recovery of possession of real property, and hence spoken of as a possessory remedy, came to be the most usual action for the trial of title to real property.

**Same—Action for Unlawful Detainer—Second trial in District Court.**—The statute of forcible entries and unlawful detainers (Gen. St. *c.* 84) was not designed to provide a mode of trying questions of title to real estate, but to afford a summary remedy for the recovery of possession where there was no real controversy as to title. But a useful and convenient practice has become established, of making use of the proceedings authorized by chapter 84, in cases in which it may turn out that

title to real estate is involved ; and if it does so turn out, the case is certified to the district court, under Gen. St. *c.* 65, § 35. The result is that where proceedings are instituted, under the forcible entry and unlawful detainer act, for the recovery of possession of real property, they may become an action for the trial of title, and therefore, in effect, and for all practical intents and purposes, an action for the recovery of real property, in the nature of the common-law ejectment. When the proceedings do become such action, the party against whom judgment is recovered may have a second trial, upon compliance with the provisions of Gen. St. *c.* 75, § 5, as amended.

**Judgment Docket—Alteration—Effect of Entries as Records.**—An alteration appearing upon a judgment docket entry, *held,* upon the facts, to be sufficiently explained. The entry of judgment in the judgment book, including the date of the judgment together with the date of docketing in the judgment docket, are parts of the records of the district court of the counties to which such judgment-book and docket belong, and, so long as they stand as such records, they import uncontrollable verity, and cannot be collaterally impeached.

**Homestead Exemption is absolute.**—The statute gives the homestead exemption absolutely, without making the right to it depend upon any affirmative action upon the part of the person claiming it toward an officer levying upon it, or about to levy upon it.

**Same—Cannot be waived by Married Man.**—Where the owner of a homestead has a wife, it is not competent for him, alone, in any way to effectually waive the homestead exemption.

Appeal by defendant from an order of the district court for McLeod county, *Macdonald,* J., presiding, refusing a new trial, after verdict for plaintiff. The land in controversy was originally pre-empted by defendant. The plaintiff claimed title as purchaser at an execution sale under a judgment in his favor and against the defendant, rendered and docketed in Carver county, and a transcript filed in McLeod county, the time for redemption from the sale having expired. The defendant pleaded and introduced evidence tending to prove that at the time of the recovery of the judgment, and down to the time of the levy and sale, he occupied the land as his homestead. In rebuttal the plaintiff offered evidence that when the sheriff made the levy, the defendant, in answer to an inquiry by the sheriff, said that he did not claim any homestead, that he did not own the land, that it was his wife's

property, and gave no statement of any kind as to the quantity of land that he claimed as a homestead. The exceptions taken at the trial are stated in the opinion.

*L. M. Brown* and *H. J. Peck,* for appellant.

*Bigelow, Flandrau & Clark,* for respondent.

BERRY, J. Under the provisions of Gen. St. *c.* 84, § 11, this action is brought, to recover possession of certain lands purchased by plaintiff at an execution sale, no redemption having been made, and the time for redemption having expired. The action was commenced before a justice of the peace, by whom (a question of title having arisen) it was certified to the district court, under Gen. St. *c.* 65, § 35. A trial in the district court resulted in a judgment for defendant. Before the expiration of six months, the plaintiff paid costs and damages, and demanded another trial, under Gen. St. *c.* 75, § 5, as amended by Laws 1867, *c.* 72, § 2. (Gen. St. 1878, *c.* 75, § 11.) The section reads as follows, viz.: "Any person against whom a judgment is recovered in an action for the recovery of real property, may, within six months after written notice of such judgment, upon payment of all costs and damages recovered thereby, demand another trial, by notice in writing to the adverse party or his attorney in the action; and thereupon the action shall be retried, and may be brought to trial by either party." Is this an action for the recovery of real property, within the meaning of this section? From a general view of the provisions of chapter 75, relating to such actions, it is quite apparent that the phrase, "action for the recovery of real property," as there used, was intended to refer to an action in the nature of the common-law ejectment. The action of ejectment, although in form an action for the recovery of possession of real property, and hence spoken of as a possessory remedy, came to be the most usual action for the trial of title to real property. Tyler on Ejectment, 33.

The statute of forcible entries and unlawful detainers, (Gen. St. *c.* 84,) under which the present action was brought, was

not designed to provide a mode of trying questions of title to
real estate.    It was designed to afford a summary remedy for
the recovery of possession, where there was no real contro-
versy as to title.    This is apparent from the general nature
of its provisions, and notably from the fact that the proceed-
ings under it were to be instituted before a justice of the peace
—a magistrate having no jurisdiction where title to real estate
is involved.    Nevertheless, under section 11, a practice has
grown up of making use of these proceedings in cases in
which it may turn out that the title to real estate is involved,
and, if it does so turn out, then the case is certified to the
district court, (as this was,) under Gen. St. c. 65, § 35.    This
practice has become so well established—see *Goenen* v. *Schroe-
der*, 8 Minn. 344 (387;) *Merriam* v. *Baker*, 9 Minn. 28 (40)—
and is so convenient and useful, that it boots not now to inquire
whether it was technically correct or not.    The result is that
where proceedings are instituted under the forcible entry and
unlawful detainer act, for the recovery of possession of real
property, they may become an action for the trial of title to
such property, and therefore, in effect, and for all practical
intents and purposes, an action for the recovery of real prop-
erty, in the nature of the common-law ejectment.    When the
proceedings do become such action, there is no good reason
why they should not fall, as in our opinion they do, within
the provisions of Gen. St. c. 75, § 5, as amended, which allow
any person, against whom a judgment is recovered in an
action for the recovery of real property, a second trial, upon
compliance with prescribed conditions.    From this conclusion
it follows that the second trial in the case at bar was properly
permitted.

The plaintiff introduced in evidence a transcript of a judg-
ment docket entry of the district court of Carver county, upon
which was the following file-mark, signed by the clerk of the
district court of McLeod county, (to whom the transcript was
sent,) viz.: "Filed, May 5, 1862."   He also offered in evidence
the judgment docket of said district court, in which, in the

entry made upon the filing of such transcript, in the column headed "Date of Docketing," two dates appeared, viz., "May 5, 1862," and "February 18, 1862," the latter date being cancelled. To this docket entry the defendant objected, upon the ground that it appeared upon its face to have been altered. The objection was properly overruled. Irrespective of the presumption that the change of date was made in the proper discharge of the clerk's duty, the alteration was sufficiently explained by the file-mark mentioned, and by the evident fact that the date, (February 18,) which, as the transcript showed, was the date of the original docketing of the judgment, was by mere inadvertence copied into the judgment docket offered in evidence.

The plaintiff introduced the judgment-book of the district court of Carver county, containing the judgment involved in this action. The judgment bore date February 18, 1862, and was signed by the proper clerk. He also introduced the judgment docket of said court, in which said judgment was docketed, the date of the judgment being entered therein as February 18, 1862. The defendant offered to show, by oral testimony, that the judgment introduced in evidence was not in fact entered until after June 1, 1863. He also offered to show, by like testimony, that the only entry relating to said judgment, made in the judgment docket of McLeod county before March 9, 1872, was one showing the date of the docketing in said county to be February 18, 1862. Both of these offers were properly rejected. The entries introduced by the plaintiff are parts of the records of the district courts of Carver and McLeod counties. So long as they stand as such records, they import uncontrollable verity. If they are erroneous, the error must be corrected in an application for that purpose to the court of which they are records. They cannot be impeached collaterally. Any other doctrine would make the records of our district courts lamentably uncertain and unreliable.

Among other things, the court in substance instructed the

jury that, in order to preserve his homestead exemption, an execution defendant must notify the officer who is about to levy upon his homestead that he claims the same as a homestead, and must give the officer a description of it, unless he is excused from so doing, or it is rendered unnecessary for him to do so, by the acts or declarations of the officer at the time of making the levy. This is wrong, for at least two reasons. In the first place, the statute gives the exemption absolutely, and without making the right to it dependent upon any affirmative action upon the part of the person claiming it towards an officer levying or about to levy upon it. In the second place, the exemption is not provided for the sole benefit of the owner of the land, if he be a married man. In such case, the homestead law is a family measure.

Whether, if the owner of a homestead were a single man, he could effectually waive his exemption, otherwise than by a conveyance; or whether, if he were a married man, he and his wife could together effectually waive the same without such conveyance, this case does not call upon us to determine. Certain it is that where the owner of a homestead has a wife, it is not competent for him alone in any way to effectually waive the exemption. To permit him to do so would be to thwart the manifest policy of the statute, and to fritter away the wholesome and beneficent protection and privilege which it was designed to secure to the family. What the policy and design of the statute in this respect are is clearly indicated in the second section of the homestead act, (Gen. St. c. 68,) which provides that no mortgage or other alienation of a homestead by the owner thereof, if a married man, shall be valid without the signature of his wife to the same, unless the mortgage be given to secure the whole or part of the purchase-money.

We are not to be understood, however, as holding, that where a debtor, being possessed of a tract of land, a part only of which he is entitled to claim as an exempt homestead, refuses to select such part, the whole tract is thereby kept

out of the reach of execution. For such a case, there must be some remedy. Perhaps one might properly be afforded by permitting the officer holding the execution to make a selection of a homestead for the debtor, with a reasonable regard to the debtor's interest.

The counsel for the plaintiff insists that there is no evidence that the defendant was a married man at the time of the levy to which this action relates. We think there is testimony in the case fairly tending to show that he was. The defendant testified that he had a wife and children in 1858, when he went into possession of the land in question, and, in the absence of a showing to the contrary, the jury might presume a continuance of that state of things.

For the erroneous instruction given to the jury, there must be a new trial, and the order of the court below refusing the same is accordingly reversed.