## NORTHWEST HOLDING COMPANY v. GORDON EVANSON AND OTHERS.

122 N. W. (2d) 596.

June 21, 1963—No. 38,771.

*Gordon Evanson, Melba P. Evanson, Paul Rosso,* and *Paulina Rosso,* pro se, for appellants.

*Maurice L. Grossman, Frank Fudali,* and *Arnold I. Feinberg,* for respondent.

OTIS, JUSTICE.

This is an appeal by defendants from three orders of the municipal court of the city of Minneapolis. The first, dated September 26, 1961, finds the defendants guilty of unlawfully detaining the premises here in question and directs judgment of restitution in favor of plaintiff. The other two orders, dated October 28, 1961, and November 20, 1961, deny motions by defendants to set aside the writ of restitution. No appeal has been taken from the judgment of restitution entered November 8, 1961. Defendants appear pro se, and plaintiff has filed no brief. While our decision to grant plaintiff's motion to dismiss this appeal renders unnecessary extended comment on the issues, we are con-

strained to discuss them fully in the hope that by so doing we may bring to a conclusion this protracted and unhappy litigation.

Inevitably, the record is sketchy, and there are gaps which make an accurate recitation of the chronology difficult. (See Appendix.) However, it appears that in the year 1919 Dan Rosso acquired title to a building containing two retail stores and two residential apartments located at 2324 and 2326 Central Avenue Northeast in the city of Minneapolis. The property was conveyed in 1951 to Paul Rosso, a son, and out of his subsequent activities all of this litigation arose.

On August 30, 1957, William Holmes sold Paul Rosso a parcel of real estate. A few days later Rosso repudiated the contract, alleging misrepresentation as to the type of construction on the premises. This controversy resulted in Holmes' bringing an action for specific performance or for damages. An advisory verdict was rendered on February 11, 1959, and findings in favor of Holmes were thereafter filed by the court. A judgment against Rosso for $3,049.75 was thereupon entered.

It appears that on September 13, 1957, Paul Rosso became involved in an altercation with James Ledwein which gave rise to an action for assault commenced 4 or 5 days later in which Ledwein alleged damages in the sum of $50,000. This action resulted in a judgment against Rosso in favor of Ledwein in the sum of $2,686.20.

It may be fairly inferred that at a time when these two claims against Rosso were pending, he conveyed the Central Avenue property back to Dan Rosso and Paulina Rosso, his parents, by a deed filed on September 30, 1957.

For almost a year and a half the Ledwein and Holmes actions were pending. In both of them Rosso had counsel. Apparently he has attributed all of his troubles to the quality of his legal representation, because he has undertaken to handle all subsequent litigation without a lawyer. The record is replete with the admonitions of judges and other public officials urging the Rosso family to retain counsel. As early as May 4, 1959, the attorney general's office advised him by letter, "The best possible course of action for you to follow is to obtain the services of an attorney and to abide by his judgment as to what course of action will most fully protect your interests." Similar advice repeated to appel-

lants has fallen on deaf ears. Not until the moment the sheriff was literally breaking down their doors did appellants again seek professional help.

Pursuant to his judgment, Holmes secured a writ of execution on June 11, 1959, under which he bought the property here in question on August 17, 1959, for the sum of $2,500. Meanwhile, on July 9, 1959, Ledwein had begun a second action against Paul Rosso to set aside the conveyance Rosso had made to his parents 2 years earlier. This lawsuit promptly precipitated a conveyance to Melba P. Evanson, a daughter, on July 30, 1959.

On August 3, 1960, Ledwein secured a judgment declaring Rosso to be the owner of the property and declaring his deed fraudulent and null and void as to creditors. Pursuant to the levy of execution to enforce his judgment, Holmes received a sheriff's certificate of sale on October 9, 1960, there having been no redemption within the year allowed by statute.[1]

Holmes commenced an action to register title to the Central Avenue property on December 29, 1960. In those proceedings the county surveyor advised the examiner of titles that Melba P. Evanson claimed to be the fee owner and that she and Paul Rosso and Paulina Rosso (also spelled "Pauline") and Gordon Evanson were in possession. In his report to the court the examiner of titles recommended that all of them be made parties, and, in addition, outlined in detail the procedural history of the judgment, levy, and execution sale on which Holmes based his title. The examiner of titles noted that the conveyance to Melba P. Evanson occurred at a time when a notice of lis pendens had been recorded by Ledwein in his action to set aside Paul Rosso's conveyance to Dan Rosso and Pauline Rosso. The examiner recommended all of these persons be made parties defendant, "so that there may be evidence at the hearing and a finding in the Decree as to whether they [Melba Evanson and Paul Rosso] do or do not have any interest in the premises herein." Accordingly, Paul Rosso, Paulina Rosso, Melba Evanson, and Gordon Evanson were all personally served in the registration proceedings. It is their claim that they appeared by answers which were

[1] Minn. St. 550.24 to 550.27.

mailed to the clerk of court on April 22, 1961, and April 25, 1961. No copies of their answers are in the record. In his report of August 8, 1961, the referee recited that there had been no appearance by any of the defendants or none which raised any issue not admitted by the proposed decree. The affidavit of default executed by counsel for the applicant does not show any answer or appearance by appellants, nor does the affidavit of default filed by the clerk of district court. Accordingly, the court entered a decree on August 8, 1961, registering title to the premises in William Holmes, showing the Rossos and Evansons to be occupants at sufferance, and reciting that no answers or appearances had been made except by persons not here involved. In addition, the decree recognized judgments in favor of Ledwein in the sum of $2,686.20, arising out of the assault, and $520 arising out of the action which he had brought to have the conveyance by Paul Rosso set aside. Attorneys' liens occasioned by these actions, in the sums of $1,350 and $520, were also preserved. No appeal or other action has been taken to challenge the registration decree.

On August 16, 1961, Holmes conveyed his interest in the property to plaintiff, Northwest Holding Company, which mortgaged it for $28,000 to Twin City Federal Savings and Loan Association on August 18, 1961. (There have been two subsequent conveyances.) The following month this action for unlawful detainer was commenced by plaintiff against defendants in the municipal court of Minneapolis, resulting in the orders and judgment to which we have referred. The parties were physically evicted on November 30, 1961. They have subsequently instituted unsuccessfully numerous unlawful detainer proceedings on their own behalf against tenants in possession.

Basically, the only issue raised by defendants is their claim that throughout all of these proceedings and since the year 1919 this property has been occupied by them as their homestead and is therefore exempt from execution.[2] If the record is accurate, neither before nor after

---

[2]Minn. Const. art. 1, § 12, provides: "* * * A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law."

Minn. St. 510.01 reads thus: "The house owned and occupied by a debtor

the Ledwein and Holmes judgments were entered against Rosso have defendants instituted judicial action or otherwise properly raised the issue of whether these premises constituted their homestead at the time of the execution sale, until this unlawful detainer hearing was conducted.[3] Meanwhile, the rights of third persons, apparently without notice, have intervened.

Under such circumstances, where there has been actual service on persons claiming an interest and they have failed to pursue their remedy with diligence, it would appear that their rights in the premises have been irrevocably lost by failing to assert them in the proceedings to register title. For the reasons we have stated, we deem it advisable to discuss the statutes and authorities governing the finality of a registration decree although the case is decided on other grounds.

1. While, as we have noted, defendants have never secured an adjudication of their homestead rights, it would appear that it was not necessary to assert them in the proceedings resulting in the execution sale. This state is particularly solicitous of the rights of homesteaders, and we have indicated that even after an execution sale an owner may have his day in court to protect his claim. Beigler v. Chamberlin, 145 Minn. 104, 106, 176 N. W. 49, 50. We have adopted a position intended to discourage waivers which "fritter away the wholesome and

as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services preformed by laborers or servants."

[3]On October 10, 1961, Judge Lindsay G. Arthur stated to one of defendants: "I can't understand, Mrs. Evanson, why you don't have an attorney, when you have this expensive property involved."

On November 9, 1961, the attorney general's office wrote to Mr. Paul Rosso: "As you recall, I urged most strongly that you immediately retain competent counsel to assist you so that you might, assuming that the facts you allege are correct, avoid the consequences of further failure to use the accepted legal channels."

beneficent protection and privilege" our homestead policy was designed to secure to the family.[4] It has been described as—

"* * * the wise and humane policy of securing to the citizen, against all the misfortunes and uncertainties of life, the benefits of a home, not in the interest of himself, or, if a married man, of himself and family alone, but likewise in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred—sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed. * * * Such being the purpose and policy of the statute, its provisions should be liberally construed, so as to carry out the legislative intent thereby manifested."[5]

Even a conveyance fraudulent as to creditors does not deprive the property of its homestead exemption.[6] Having in mind the rules which jealously protect the rights of homesteaders, we turn to the question of what effect registering title under Minn. St. c. 508 may have on the claims of defendants.

2. Assuming defendants filed answers with the clerk of district court in conformity with § 508.17, further proceedings were governed by the rules pertaining to ordinary civil actions. Minn. St. 508.20; District Court Rules, Part II, Rule 10 (Minn. St. 1961, p. 4943). To the extent they are not inconsistent with the statute, the Rules of Civil Procedure therefore obtain.[7] It is the contention of defendants that having appeared in the case they were thereafter entitled to notice of all subse-

---

[4]Ferguson v. Kumler, 25 Minn. 183, 188.

[5]Ferguson v. Kumler, 27 Minn. 156, 159, 6 N. W. 618, 619; see, also, Hickman v. Sutherland, 222 Minn. 161, 167, 23 N. W. (2d) 593, 597; Holden v. Farwell, Ozmun, Kirk & Co. 223 Minn. 550, 558, 27 N. W. (2d) 641, 646; 1 American Law of Property, § 5.98.

[6]Horton v. Kelly, 40 Minn. 193, 195, 41 N. W. 1031; Thysell v. McDonald, 134 Minn. 400, 403, 159 N. W. 958, 960; Note, 25 Minn. L. Rev. 80.

[7]See, also, Rule 81.01 and Appendix A, Rules of Civil Procedure; In re Application of McDaniel to Register Title, 257 Minn. 78, 82, 100 N. W. (2d) 497, 501.

quent proceedings.[8] Rule 55.01(2) provides, among other things, as follows:

"* * * If a party against whom judgment is sought has appeared in the action, he shall be served with written notice of the application for judgment at least three days prior to the hearing on such application."

Minn. St. 546.07 provides in part:

"If a party be absent, unless the court for good cause shall otherwise order, the adverse party may proceed with his case and take a dismissal of the action or a verdict or judgment as the case may require."[9]

The question remains whether defendants' failure to receive notice of the date of hearing deprives the court of jurisdiction and renders the proceedings ineffective.

We have held that a defendant who has knowledge of a pending suit and has filed an answer but has failed to appear at the trial may not be relieved of an adverse judgment except for the most cogent reasons.[10] Even where a defendant has retained counsel, if he fails to keep in touch with the proceedings to ascertain the progress of the case it may evidence an inexcusably indifferent attitude, justifying a refusal to vacate a judgment.[11] Our decisions suggest that parties have an affirmative duty to determine the status of their litigation without reference to whether or not they have been properly advised of the time of hearing. It seems clear, therefore, that personal service having been made on defendants, the court had jurisdiction to enter a valid decree, subject only to timely motions to relieve defendants of any default which may have resulted from their failure to receive actual notice.

3. Our statute intends that a decree of registration be a final adjudication of title which may not be attacked except under the limited circumstances set out in the law.[12] Even those who have not been served

---

[8]District Court Rules, Part II, Rule 6 (Minn. St. 1961, p. 4942).

[9]See, also, Rules 38.03 and 40, Rules of Civil Procedure; Rule 5, Fourth Judicial District Court Rules; Nyberg v. Cambridge State Bank, 245 Minn. 312, 316, 72 N. W. (2d) 345, 347.

[10]Merritt v. Putnam, 7 Minn. 399 (493).

[11]Randall v. Randall, 133 Minn. 63, 64, 157 N. W. 903, 904.

[12]Minn. St. 508.22 provides as follows: "If, after hearing, the court finds

and have no knowledge of the proceedings must ordinarily act within 60 days of the entry of decree or be foreclosed.[13] Except for fraud, we have indicated that the limitation of 6 months within which to attack a registration decree is absolute.[14] Under our registration law we have noted that where a judgment regular on its face has determined title to property and discloses no patent lack of jurisdiction, it is not subject to collateral attack.[15]

The defendants were properly served, and whether they answered or not they had actual notice of the proceedings and were advised within 10 days of the entry of the decree that their rights had been ter-

the applicant has a title proper for registration, whether as stated in his application or otherwise, it shall make and file its decree therein, confirming the title of the applicant and ordering the registration thereof. Except as herein otherwise provided, every decree of registration shall bind the land described therein, forever quiet the title thereto, and be forever binding and conclusive upon all persons, whether mentioned by name in the summons, or included in the phrase, 'all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the application herein,' and such decree shall not be opened, vacated, or set aside by reason of the absence, infancy, or other disability of any person affected thereby, nor by any proceeding at law or in equity for opening, vacating, setting aside, or reversing judgments and decrees, except as herein especially provided. The decree shall forever determine, bind, and conclude all the right, title, interest, estate, or lien in the land described therein of the husband or wife of any defendant acquired or growing out of the marriage relation in like manner as if such husband or wife had been expressly named in the decree."

[13] § 508.26; Lamprey v. American Hoist & Derrick Co. 197 Minn. 112, 121, 266 N. W. 434, 439. But see § 508.75, which establishes an assurance fund for those who sustain damage without fault in registration matters.

[14] § 508.28; Village of Savage v. Allen, 255 Minn. 73, 78, 95 N. W. (2d) 418, 422. Even in cases involving fraud we have indicated that actions to set aside the decree brought after 6 months are not effective if the rights of third parties intervene. Baart v. Martin, 99 Minn. 197, 212, 108 N. W. 945, 951.

[15] Jones v. Wellcome, 141 Minn. 352, 355, 170 N. W. 224, 226; Dean v. Rees, 208 Minn. 38, 41, 292 N. W. 765, 767; In re Application of Rees to Register Title to Land, 211 Minn. 103, 300 N. W. 396.

minated.[16] These unlawful detainer proceedings were commenced approximately a month after the decree was entered, but to date defendants have done nothing to question the validity of that decree except to assert in open court in collateral matters that it has no validity because of their homestead exemption. Having failed to pursue any of the remedies which might have been available to them, and the rights of a mortgagee and purchasers apparently without notice having now intervened, it is obvious that the decree of registration must be given effect in the proceedings which are before us for review.[17]

4. While the municipal court of Minneapolis may entertain jurisdiction in an unlawful detainer action notwithstanding the fact that title to real estate is involved,[18] the court's function is limited to resolving the right to possession. In order effectively to assert homestead rights,

---

[16]The following letter appears in the record:

"MINENKO, FEINBERG, MIRVISS, MEYERS & SCHUMACHER

"August 18, 1961

"Gordon Evanson and Melba P. Evanson
2326 Central Avenue N. E.
Minneapolis, Minnesota
"Dear Gordon Evanson and Melba P. Evanson:

"This is to advise that I am the attorney for the Northwest Holding Company which has purchased the property at 2326 Central Avenue NE. and that you are hereby notified to vacate the premises that you are now occupying at this address within seven days from the receipt of this letter.

"If you have not vacated the premises by that time, I shall commence whatever legal proceedings are necessary to secure possession of the premises for my client.

"Very truly yours,
"/s/ I. Mirviss
I. Mirviss

"CERTIFIED MAIL,

RETURN RECEIPT REQUESTED."

[17]See, Staples, *The Conclusiveness of a Torrens Certificate of Title,* 8 Minn. L. Rev. 200; Patton, *The Torrens System of Land Title Registration,* 19 Minn. L. Rev. 519.

[18]§ 488A.01, subd. 5; Henschke v. Young, 226 Minn. 339, 32 N. W. (2d) 854; Dahlberg v. Young, 231 Minn. 60, 67, 42 N. W. (2d) 570, 576.

it would appear necessary to bring an action of ejectment not justiciable in municipal court.[19]

5. Although we have commented on the merits of defendants' claims, calling attention to the authorities which would make unlikely their right to recover if the matter were determined on its merits, we are required to dispose of the case on the narrow issue of whether the orders before us are appealable. Under § 488A.11, subd. 2, c. 566, and § 605.09, we hold that appeals in actions for unlawful detainer may be taken only from the judgment. In Gray v. Hurley, 28 Minn. 388, 10 N. W. 417, an appeal was attempted from an order overruling a demurrer in an unlawful detainer proceeding. We held that the order was not appealable and noted that to permit review of interlocutory matters would strip the proceedings of their summary character. Later cases, Doyle v. Long, 205 Minn. 322, 285 N. W. 832, and Goldberg v. Fields, 247 Minn. 213, 76 N. W. (2d) 668, held that an order denying a motion to vacate a judgment of restitution was not appealable. We there stated that the statute confines review to appeals from judgments. An order overruling a special appearance in an unlawful detainer action was held not appealable in Pushor v. Dale, 240 Minn. 179, 60 N. W. (2d) 128. We therefore hold that the orders before us are not appealable, and respondent's motion to dismiss the appeal is therefore granted.

6. This has been unusual and unfortunate litigation. The appellants have brought on themselves great hardship, severe economic loss, and needless anguish for which they now appear to have no remedy. They have stubbornly refused to acknowledge any fault in their own conduct despite two manifestly proper judgments against appellant Paul Rosso arising out of an assault and a breach of contract. In both proceedings he was represented by counsel who apparently could do little more than mitigate the damages he invited by his own wrongdoing. Appellants have refused to face reality or heed persistent admonitions to retain counsel. From the record it appears entirely likely that these premises were in-

---

[19]Ferguson v. Kumler, 25 Minn. 183; Mutual Trust Life Ins. Co. v. Berg, 187 Minn. 503, 505, 246 N. W. 9, 10; Keller v. Henvit, 219 Minn. 580, 585, 18 N. W. (2d) 544, 547; Gallagher v. Moffet, 233 Minn. 330, 46 N. W. (2d) 792.

deed the appellants' homestead and as such should have been exempt from execution had they acted diligently to assert their rights. Although in good conscience it might have been proper for these creditors to satisfy their judgments out of the Central Avenue property, overriding public policy would have prevented it. However, at most, they were entitled to only $8,100. Nevertheless, by levying execution and securing a decree of registration, William Holmes has obtained real estate worth approximately $35,000 to satisfy claims amounting to less than one-fourth of that amount. Holmes' acquisition has been euphemistically described as a "windfall." It is difficult to draw the exact line between what is the legitimate assertion of a client's rights and what amounts to an unfair overreaching of his adversary. Wherever that line may be, the gross injustice which has resulted from exploiting the improvidence of these appellants has brought little credit to the legal profession.

Appeal dismissed.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

### APPENDIX

Chronology of Events Affecting Title to the Premises at 2324-2326 Central Avenue N. E., Minneapolis.

Sept. 5, 1957 —Rescission by Paul Rosso of contract with William Holmes.

Sept. 17, 1957 —Assault action brought by James Ledwein against Paul Rosso.

Sept. 30, 1957 —Conveyance of Central Avenue property from Paul Rosso to Dan and Pauline Rosso, his parents, recorded.

\* \* \* \* \*

Feb. 11, 1959 —Verdict for Holmes against Paul Rosso for breach of contract.

June 11, 1959 —Execution issued for Holmes on Central Ave. property. $3,049.75 judgment.

Before July 9, 1959 —Verdict for Ledwein against Paul Rosso in assault action. $2,686.20 judgment.

On July 9, 1959 —Lis pendens filed in action begun by Ledwein against Paul Rosso to set aside 1957 conveyance to his parents.

July 30, 1959 —Conveyance of Central Ave. property from Dan and Pauline Rosso to daughter Melba Evanson.

Aug. 17, 1959 —Execution sale to Holmes.

\* \* \* \* \*

Aug. 3, 1960 —Judgment for Ledwein setting aside 1957 conveyance from Paul Rosso to his parents.

Oct. 9, 1960 —Sheriff's certificate of sale to Holmes.

\* \* \* \* \*

April 5, 1961 —Rossos and Evansons served with summons by Holmes in action to register title to Central Ave. property.

Aug. 8, 1961 —Decree of district court registering title in Holmes subject to Ledwein lien and liens filed by his attorney.

Aug. 16, 1961 —Deed from Holmes to Northwest Holding Co.

Aug. 18, 1961 —$28,000 mortgage to Twin City Federal.

Nov. 8, 1961 —Judgment of restitution for Northwest Holding Co.

Nov. 30, 1961 —Rossos and Evansons evicted.

\* \* \* \* \*

May 9, 1962 —Rossos appeal restitution orders.