LARKIN, Judge
Appellant creditors challenge the district court's dismissal of their fraudulent-transfer claims against respondents, which were brought under the Minnesota Uniform Fraudulent Transfer Act (MUFTA) based on respondent husband's transfer of his *751 interest in certain real property to his wife, who is also a respondent in this appeal. The district court dismissed appellants' MUFTA claims based on its determination that husband's interest in the property was not an asset as defined in MUFTA. Appellants argue that the district court abused its discretion by amending its posttrial findings to determine that at the time of the transfer, the market value of the property was $1,935,000 and by applying a $750,000 agricultural homestead exemption. By notice of related appeal, respondents argue that the district court erred by determining that a $3,000,000 guaranty mortgage is not a valid lien encumbering the property under MUFTA. Because the district court did not err in determining the market value of the property and because any errors related to the agricultural homestead exception and guaranty mortgage are harmless, we affirm.
FACTS
From 2001 until February 29, 2012, respondents John D. Klingelhutz and Durene D. Klingelhutz, husband and wife, continuously owned and occupied real property in Carver County as joint tenants. The property is composed of three contiguous parcels totaling 49.28 acres and is classified by Carver County for tax purposes as homestead agricultural. Respondents reside in a home on the largest parcel. On February 29, 2012, Mr. Klingelhutz conveyed, by quit claim deed, his joint-tenancy interest in the Carver County property to Mrs. Klingelhutz.
In July 2016, appellants Landmark Community Bank N.A. (Landmark) and Security Bank & Trust Company (Security) sued respondents, asserting that Mr. Klingelhutz's February 29, 2012 transfer of his joint-tenancy interest in the Carver County property to Mrs. Klingelhutz was void under MUFTA and that the property was therefore available to satisfy appellants' outstanding judgments against Mr. Klingelhutz.
Appellants' fraudulent-conveyance claims were tried to the court. At trial, respondents' appraiser, a certified appraiser with 15 years of real-estate appraisal experience, testified that the fair market value of the property at the time of the transfer was $1,935,000. The district court received, pursuant to the parties' stipulation, copies of Carver County property cards for the property indicating that the 2015 assessed values of the parcels composing the property were $2,470,000, $108,700, and $241,800 and that the 2016 assessed values of the parcels were $2,470,000, $112,400, and $250,000.
Appellants did not submit a market-value appraisal. Instead, appellants asked the district court, in posttrial submissions, to take judicial notice of the 2012 and 2013 tax-assessed values of the parcels composing the property. Appellants did not submit any documentation establishing the 2012 and 2013 tax-assessed values. Instead, appellants set forth those values in their proposed findings of fact and suggested that judicial notice be taken. In its initial findings of fact following trial, the district court accepted appellants' assertions that the 2012 tax-assessed values of the parcels were $2,537,000, $108,000 and $241,200 and that the 2013 assessed values of the parcels were $2,104,800, $83,400, and $185,500. However, that acceptance was "subject to [respondents'] right to present any contradictory evidence of such in connection with a motion for reconsideration or amended findings."
The district court's initial findings also set forth the following facts. In June 2001, respondents granted mortgages of $158,000 and $475,000 to Community Bank Chaska. Those mortgages encumbered two of the property's three parcels. As of February 29, 2012, respondents had only paid interest on the mortgages.
*752 In January 2008, Vista Canyon LLC, owned by Mr. Klingelhutz, entered into a loan agreement with The RiverBank for $7,750,000 to fund the development and construction of a senior-housing facility. Mr. Klingelhutz personally guaranteed the loan. Later, the RiverBank loan agreement was amended to add Mrs. Klingelhutz as an additional personal guarantor. Respondents executed a guaranty mortgage in the amount of $3,000,000 in favor of The RiverBank. One of the Carver County property's parcels served as security for the guaranty mortgage.
In November 2008, Klingelhutz Development Company, owned by Mr. Klingelhutz, granted Community Bank Corporation a mortgage in the amount of $245,000 on one of the property's parcels.
In 2009, the district court awarded judgment of $451,213.51 for Associated Bank against Mr. Klingelhutz. The judgment was docketed in Ramsey and Carver Counties. As of February 29, 2012, Mr. Klingelhutz had not satisfied any portion of the judgment.
In 2010, Landmark sued Mr. Klingelhutz to recover a debt he owed pursuant to a loan agreement. In September 2013, the district court awarded judgment of $403,524.42 for Landmark against Mr. Klingelhutz. The judgment was docketed in Ramsey and Carver Counties.
In 2016, Security sued Mr. Klingelhutz, Klingelhutz Investment Company, and Klingelhutz Development Company to recover a debt owed under a 2006 promissory note and personal guaranty. In January 2017, the district court awarded judgment of $812,314 for Security against Mr. Klingelhutz. The judgment was docketed in Carver County.
The district court found that when Mr. Klingelhutz transferred his interest in the Carver County property to Mrs. Klingelhutz in 2012, the reasonable value of the property was $2,427,800, that Mr. Klingelhutz was entitled to a homestead exemption of $300,000 against any judgment on the property, and that the property was encumbered by three mortgages totaling $878,000, as well as the 2009 $451,213.51 judgment for Associated Bank. The district court found that "the amount of debt secured by [respondents'] guaranty mortgages" as of the date of transfer was zero, "[b]ecause the underlying principal mortgages had not been deemed in default." The district court also found that because respondents had a $798,586.49 nonexempt interest in the property and the transfer of Mr. Klingelhutz's joint-tenancy interest in the property to Mrs. Klingelhutz was "done in an attempt to place the Property beyond the reach of [appellants] and [Mr. Klingelhutz's] other creditors," the transfer was fraudulent.[1]
In December 2017, respondents moved for amended findings, or, in the alternative, a new trial. Consistent with the district court's reservation of respondents' right to present evidence contradicting appellants' posttrial assertions regarding tax-assessed values, respondents submitted an affidavit from their appraiser further explaining his appraisal and the comparables on which he relied.
Respondents argued that the reasonable value of the property at the time of transfer was $1,935,000, that the district court should have applied an agricultural homestead exemption of $750,000, and that the property was encumbered by four mortgages totaling $3,878,000, including the $3,000,000 guaranty mortgage in favor of *753 The RiverBank. Respondents also argued that the district court erred in computing the nonexempt interest in the property by subtracting the amount of the mortgages and the $451,213.51 judgment from the total value of the property, and not just from Mr. Klingelhutz's interest in the property. Respondents concluded that, based on their proposed amended findings, Mr. Klingelhutz's interest in the property was not an asset as defined by MUFTA and the transfer of his joint-tenancy interest therefore did not violate MUFTA.
The district court granted respondents' motion for amended findings in part. The district court amended its finding regarding the property's market value at the time of the 2012 transfer, finding "the value of the Property to be not less than $1,935,000 as determined by [respondents'] appraisal." The district court also amended its finding regarding the homestead exemption. The district court found that the property "has been enrolled in the Green Acres tax deferment program since 2000" and reasoned that based on the Green Acres enrollment,[2] and because respondents had "testified they farmed the Property for a number of years and now rent the tillable acreage on it to a local farmer," Mr. Klingelhutz was entitled to a $750,000 agricultural homestead exemption.
The district court did not amend its findings or determination regarding the $3,000,000 guaranty mortgage. However, the district court found that it was not appropriate to include the $245,000 mortgage in favor of Community Bank Corporation in the computation of Mr. Klingelhutz's equity in the Carver County property because that mortgage was signed by Mr. Klingelhutz as CEO of Klingelhutz Development Company, and not by Mrs. Klingelhutz, and because Klingelhutz Development Company did not have an ownership interest in the property.
Based on the amended findings, the district court concluded that "[a]t the time of transfer, [Mr. Klingelhutz's] interest in the Property was -$550,000, and the Property was therefore not an asset under MUFTA."[3] The district court therefore dismissed appellants' MUFTA claims.
Landmark and Security appeal, challenging the district court's amended property valuation, application of the agricultural homestead exemption, and dismissal of their MUFTA claims. Respondents have filed a notice of related appeal, challenging the district court's determination that the $3,000,000 guaranty mortgage is not a valid lien encumbering the property under MUFTA.
ISSUES
I. Did the district court err by amending its findings regarding the market value of the Carver County property at the time of the 2012 transfer?
II. Did the district court err by applying the agricultural homestead exemption under Minn. Stat. § 510.02, subd. 1 ?
III. Did the district court err by determining that the $3,000,000 guaranty mortgage was not a valid lien encumbering the property under MUFTA?
ANALYSIS
"Upon motion of a party ..., the court may amend its findings or make *754 additional findings, and may amend the judgment accordingly if judgment has been entered." Minn. R. Civ. P. 52.02. We review the district court's decision whether to grant a motion for amended findings for an abuse of discretion. Zander v. Zander , 720 N.W.2d 360, 364 (Minn. App. 2006), review denied (Minn. Nov. 14, 2006); see Stroh v. Stroh , 383 N.W.2d 402, 407 (Minn. App. 1986) ("[T]he purpose of a motion to amend conclusions is to permit the [district] court a review of its own exercise of discretion."). The district court abuses its discretion if "its decision is based on an erroneous view of the law or is against logic and the facts in the record." Thompson v. Schrimsher , 906 N.W.2d 495, 500 (Minn. 2018) (quotation omitted).
Under MUFTA, a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.
Minn. Stat. § 513.44(a) (2010).[4]
A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset ...." Minn. Stat. § 513.41(12) (2010). An "asset" is defined as "property of a debtor," but does not include "property to the extent it is encumbered by a valid lien" or "property to the extent it is generally exempt under nonbankruptcy law." Minn. Stat. § 513.41(2)(i)-(ii) (2010).
With these principles in mind, we turn to the parties' assignments of error.
I.
Appellants contend that the district court abused its discretion by amending its findings regarding the market value of the Carver County property at the time of the 2012 transfer. That valuation is the starting point for the district court's determination that, given the valid liens encumbering the property and the applicable homestead exemption, Mr. Klingelhutz's interest in the property had a negative value and therefore was not an asset under MUFTA. The district court's final valuation of $1,935,000 is based on respondents' market-value appraisal, which was supported by the trial testimony of respondents' appraiser, as well as the appraiser's affidavit in support of respondents' request for amended findings.
Consistent with caselaw in other contexts, we review the district court's finding regarding the market value of the Carver County property at the time of the transfer for clear error and consider whether the finding is reasonably supported by the evidence as a whole. See Berry & Co., Inc. v. County of Hennepin , 806 N.W.2d 31, 33 (Minn. 2011) (stating standard in context of supreme court review of the tax court's property valuation);
*755 Maurer v. Maurer , 623 N.W.2d 604, 606 (Minn. 2001) (stating that appellate courts will not set aside a district court's determination of an asset's value in a family-law case unless the finding was "clearly erroneous on the record as a whole" (quotation omitted)). We do not reweigh the evidence that was before the district court, and we defer to a district court's credibility determinations. Sefkow v. Sefkow , 427 N.W.2d 203, 210 (Minn. 1988) ; Gada v. Dedefo , 684 N.W.2d 512, 514 (Minn. App. 2004).
In its initial findings of fact, the district court noted that "the comparables used in [respondents'] appraisal all appear to be single family residences with widely varying adjoining acreage," the appraised property was 49.28 acres, the acreage of the comparables ranged from 1.21 to 37.6, and "yet no adjustments were made to the valuations to account for the differing parcel sizes." The district court found that "[b]ased upon historical assessed values of the Property, [respondents'] appraisal undervalued the land value of the Property by approximately $10,000 per acre, or $492,800" and that, as a result, the reasonable value of the property as of the date of the transfer was $2,427,800.
In the district court's order amending its findings, after its posttrial receipt of the affidavit of respondents' appraiser, the court stated that "it [was] troubling to the Court" that respondents' appraiser "made only one adjustment to value based upon a 1.21 acre comparable, and no adjustments to any of the other comparables ranging in size from 4.03 acres to 37.6 acres." But the district court noted that "[t]he assessed values of the Property reflect markedly different values" and ultimately found that the value of the property was "not less than $1,935,000 as determined by [respondents'] appraisal."
Appellants challenge the district court's amended valuation and reliance on respondents' appraisal, arguing that the comparable properties on which the appraiser relied were substantially smaller than the Carver County property and "undervalued the land at issue by approximately $10,000 per acre, or $492,800 in total, when compared to the historical assessed values of the property." Appellants further argue that because "tax assessments provided the only reliable evidence in the record for the value of the Property," the district court should have retained its original valuation of $2,427,800, which was based on the tax-assessed value of the property. Lastly, appellants argue that the district court erred, as a matter of law, by reasoning that the tax-assessed property values are not equivalent to market values.
Generally, when valuing property for tax purposes, "all property shall be valued at its market value." Minn. Stat. § 273.11, subd. 1 (2018). A tax assessor must "determine the market value of each tract or lot of real property listed for taxation, including the value of all improvements and structures thereon." Minn. Stat. § 273.08 (2018). Moreover, when determining the fair market value of property, "any competent evidence may be considered, if it legitimately bears upon the market value." Ramsey County v. Miller , 316 N.W.2d 917, 919 (Minn. 1982) (quotation omitted) (stating principle in context of a condemnation proceeding). "[T]he assessed valuation of the property as shown in the county auditor's records should be admissible as bearing upon the fair market value of the property." Id . at 922.
For all of those reasons, tax-assessed values of the Carver County property were relevant when determining its market value. See Minn. R. Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without *756 the evidence."). However, when determining the market value of the Carver County property in this dispute between private parties, the district court was not required to weigh any tax-assessed value more heavily than respondents' market-value appraisal. See, e.g. , Ferche Acquisitions, Inc. v. County of Benton , 550 N.W.2d 631, 633, 635 (Minn. 1996) (affirming tax court's valuation based on property owner's appraisal and not county assessor's valuation of property).
We recognize that, in certain proceedings, "the government's assessment of real property taxes is prima facie valid." S. Minn. Beet Sugar Coop v. County of Renville , 737 N.W.2d 545, 557 (Minn. 2007). The legislature has provided for this presumption, and the relevant statutes "create a presumption of validity for [a] county's [assessed value]." Id. ; see Minn. Stat. § 271.06, subd. 6(a) (2018) ("[T]he order of the commissioner or the appropriate unit of government in every case shall be prima facie valid."); Minn. Stat. § 272.06 (2018) (providing that the assessment is "presumed to be legal until the contrary is affirmatively shown"). However, that presumption applies in the context of an appeal to the tax court from any official order of the commissioner of revenue. Minn. Stat. § 271.06, subd. 6 (2018). We are not aware of authority suggesting that the same presumption applies in a dispute between private parties regarding the market value of property. The tax-assessed value is simply one form of evidence bearing on the market-value determination.
In its amended findings, the district court considered appellants' assertions regarding the 2012 and 2013 assessed values, but it stated that the "assessed values are not equivalent to market values." Based on that statement, and others like it, appellants argue that the district court rejected their evidence of tax-assessed value "based on a false dichotomy between tax and market valuations."
Appellants' argument finds some support in the district court's amended findings. For example, the district court stated that "the only evidence of market value before the Court is the ... appraisal." But when that statement, and others like it, are read in context, we are not concerned that the district court erroneously rejected appellants' tax-assessed values as irrelevant to its market-value determination. For example, the finding immediately preceding the one quoted above states that "only values relating to 2012 are relevant," indicating the district court considered the 2012 tax-assessed values in its analysis. And the district court's statement that "assessed values are not equivalent to market values" could simply reflect that tax-assessed values do not control a district court's market-value determination.
Perhaps the district court could have more clearly explained why it chose to rely on respondents' appraisal, and not on tax-assessed values, when determining market value. But it is not surprising that the district court relied more heavily on the appraisal given the procedural posture of this case. Although appellants point to flaws in respondents' appraisal, they did not submit a competing appraisal for the district court's consideration. Nor did they offer evidence of the 2012 and 2013 tax-assessed values at trial. Instead, they asserted those tax-assessed values in their posttrial proposed findings, contending that judicial notice would be appropriate.
Although the district court considered appellants' posttrial assertions regarding the tax-assessed values of the Carver County property, the district court discredited them, noting that "[n]o disclosure of [appellants'] intent to ask the Court to take judicial notice of the assessed values was made to [respondents] at or prior to *757 trial, nor did [appellants] provide the Court with any support for the alleged assessed values." In sum, the record as a whole indicates that the district court found respondents' appraisal more credible than appellants' posttrial assertions regarding tax-assessed values.
We do not reweigh the evidence on appeal. See Sefkow , 427 N.W.2d at 210 (stating that an appellate court usurps the role of the district court if it "reweigh[s] the evidence and find[s] its own facts"). And on this record, we cannot say that the district court's amended market-value finding is not reasonably supported by the evidence and therefore clearly erroneous. Nor can we say that the district court's decision to amend its initial market-value finding based on respondents' authorized posttrial submission of their appraiser's affidavit is based on an erroneous view of the law or against logic and the facts in the record. The district court therefore did not abuse its discretion by granting the motion for amended findings and valuing the property at $1,935,000 at the time of transfer.
II.
Appellants contend that the district court abused its discretion by amending its findings to apply an agricultural homestead exemption of $750,000. "A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." Minn. Const. art. I, § 12. The homestead exemption is set forth in statute as follows:
The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing ....
Minn. Stat. § 510.01 (2018). The owner of homestead property "may sell and convey the homestead without subjecting it ... to any judgment or debt from which it was exempt in the owner's hands." Minn. Stat. § 510.07 (2018). "Even a conveyance fraudulent as to creditors does not deprive the property of its homestead exemption." Nw. Holding Co. v. Evanson , 265 Minn. 562, 122 N.W.2d 596, 600 (1963).
The homestead statute provides a standard homestead exemption and a greater exemption "if the homestead is used primarily for agricultural purposes ." Minn. Stat. § 510.02, subd. 1 (emphasis added). The district court reasoned that the relevant homestead exemption amounts at the time of transfer were $300,000 for the standard exemption and $750,000 for the agricultural exemption, relying on Minn. Stat. § 510.02, subd. 1.[5]
In its initial findings of fact, the district court concluded that the agricultural homestead exemption was inapplicable, reasoning as follows:
[Respondents] testified they farmed the Property for a number of years, and now rent a portion of it to a local farmer. [Mr. Klingelhutz] testified [that] in 2012 *758 they grew corn, hay and beans, some of which was sold for approximately $4,000 and some of which was used to feed their hobby horses. There was no testimony as to the acreage of the cropland or their income from farming in other years. The Court cannot find, based upon the record presented, that the Property was used by [respondents] primarily for agricultural purposes.
In its order amending that finding, the district court concluded that
Because [appellants] have offered no evidence contradicting classification of the Property as primarily used for agriculture ... and the Property is classified by Carver County, for tax purposes, as homestead agricultural and has been enrolled in the Green Acres tax deferment program since 2000, [respondents] are entitled to an agricultural homestead exemption of $750,000.
The district court reasoned that "[t]he County's determination [that respondents'] Property has qualified for enrollment in the Green Acres" property-tax program "since 2000 is instructive, if not determinative [as] to whether [respondents] are entitled to an agricultural homestead exemption." (Emphasis added.) The district court noted that "[p]arcels of property ten acres or more are entitled to valuation and tax deferment under the Green Acres program if they are primarily devoted to agricultural use and include the homestead of the owner" and that "[t]he value of properties in the Green Acres program for taxation purposes is determined solely with reference to their agricultural classification." The district court also noted that respondents testified that they farmed the property for a number of years and since then have rented the tillable acreage to a local farmer.
Appellants argue that the district court erred by relying on the property's tax classification and enrollment in the Green Acres program, because "the issue is not whether the Property has been enrolled under the Green Acres program for property tax purposes," but "whether the Property would qualify for the agricultural homestead exemption." (Emphasis omitted).
We are not aware of any precedent regarding whether a court may consider a property's tax classification when determining whether the property's owner is entitled to the agricultural homestead exemption under Minn. Stat. § 510.02, subd. 1. However, in In re Grimlie , the United States Bankruptcy Appellate Panel of the Eighth Circuit stated that "the inquiry focuses on the use of the property, not classification for tax or zoning or other purposes." 439 B.R. 710, 723 (8th Cir. B.A.P. 2010). That statement is consistent with the plain language of Minn. Stat. § 510.02, subd. 1, and it guides our analysis.
Again, a property qualifies for the agricultural homestead exemption if "the homestead is used primarily for agricultural purposes." Minn. Stat. § 510.02, subd. 1. Similarly, a property cannot be enrolled in the Green Acres program unless "it is primarily devoted to agricultural use." Minn. Stat. § 273.111, subd. 3. Thus, the statutes governing availability of the agricultural homestead exemption and enrollment in the Green Acres program both require that the subject property be used primarily for agricultural purposes. Although the homestead-exemption statute refers to the property's use and not its tax classification, because a property's enrollment in the Green Acres program is based on the same use described in the homestead exemption statute, such enrollment is relevant when determining availability of the agricultural homestead exemption. See Minn. R. Evid. 401.
However, a property's enrollment in the Green Acres program should not be determinative *759 when, as is the case here, the record contains other evidence regarding the actual use of the property. We do not discern a reason why the district court should be required to ignore evidence regarding the actual use of the property, or the extent of its agricultural use, simply because the property is enrolled in the Green Acres program. Much like the tax-assessed values discussed in section I of this opinion, the Green Acres enrollment is simply one form of evidence bearing on the homestead-exemption determination. If a judgment creditor challenges application of the agricultural homestead exemption and the record contains evidence suggesting that the subject property is not used primarily for agricultural purposes, such evidence is relevant and the district court must consider it.
In sum, a district court must consider the entire record when determining whether a property is used primarily for agricultural purposes such that the property's owner qualifies for the agricultural homestead exemption under Minn. Stat. § 510.02, subd. 1. When making such a determination, the property's enrollment in the Green Acres property-tax program under Minn. Stat. § 273.111, subd. 3, is relevant, but it is not determinative.
Here, the district court's statements that "[t]he County's determination [that respondents'] property has qualified for enrollment in the Green Acres program since 2000 is instructive, if not determinative [as] to whether [respondents] are entitled to an agricultural homestead exemption" and that appellants "have offered no evidence contradicting classification of the Property as primarily used for agriculture" suggest that the district court treated the Green Acres enrollment as creating a presumption that the property was used primarily for agricultural purposes. If the district court did so, it erred. However, as explained below, such error would be harmless.
Under the harmless error rule,
No error ... or defect in any ruling or order ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.
Minn. R. Civ. P. 61. Moreover, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."Id .
In its amended findings, the district court computed the amount of Mr. Klingelhutz's equity in his interest in the Carver County property at the time of the transfer as follows:[6]
*760 Encumbrance/Exemption Value JOINT Mr. Klingelhutz Mrs. Klingelhutz Value of Property $1,935,000 $158,000 Mortgage -$ 158,000 $475,000 Mortgage $ 475,000 __________ Equity before Individual $1,302,000 $651,000 $651,000 Mortgage and Judgment Homestead Exemption - $750,000 $451,000 Judgment - $451,000 ________ Equity after Mortgages - $550,000 $651,000
Substitution of the $300,000 standard homestead exemption for the $750,000 agricultural homestead exemption in the computation above changes the value of Mr. Klingelhutz's nonexempt interest in the property from -$550,000 to -$100,000. But that change does not affect the district court's determination that Mr. Klingelhutz's interest in the property was not an asset under MUFTA at the time of the 2012 transfer.[7] Thus, any error resulting from the district court's application of the agricultural homestead exemption based on the Carver County property's enrollment in the Green Acres program does not affect appellants' substantial rights, and it does not provide a basis for relief.
In sum, even if the district court erred by applying the agricultural homestead exemption instead of the standard exemption, the error is harmless, and the district court did not err by dismissing appellants' MUFTA claims based on its conclusion that Mr. Klingelhutz's interest in the Carver County property was not an asset under MUFTA.
III.
We now turn to the issue raised in respondents' cross-appeal. Respondents contend that the district court erred by "failing to grant [their] motion for amended findings ... related to the application of the guaranty mortgage on the property." Respondents argue that the district court should have treated the $3,000,000 guaranty mortgage pertaining to the loan agreement with The RiverBank as an encumbrance on the Carver County property for the purpose of determining the value of Mr. Klingelhutz's equity in the property.
As noted above, an "asset" under MUFTA does not include "property to the extent it is encumbered by a valid lien." Minn. Stat. § 513.41(2)(i). A "valid lien" is a "lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." Minn. Stat. § 513.41(13) (2010). The issue here is whether the $3,000,000 guaranty mortgage constitutes a valid lien encumbering the Carver County property such that it reduces Mr. Klingelhutz's equity in *761 the property by the amount of the guaranty.
Relying on this court's decision in Landmark Cmty. Bank, N.A. v. Klingelhutz ( Landmark I ), the district court determined that the guaranty mortgage was not a valid lien encumbering the property. 874 N.W.2d 446 (Minn. App. 2016), review denied (Minn. Apr. 27, 2016). Under Landmark I , "[r]eal property securing a guaranty mortgage is an asset under the Minnesota Uniform Fraudulent Transfer Act when, at the time of transfer, there was no claim of default upon the underlying principal or the guaranty mortgage and the property had value."[8] Id. at 447-48 (emphasis added). The district court reasoned that under Landmark I , "[b]ecause the underlying principal mortgage[ ] had not been deemed in default, the amount of debt secured by [respondents'] guaranty mortgage[ ] as of February 29, 2012 was zero."
Respondents argue that this court incorrectly decided Landmark I and ask this court to correct its decision. Respondents alternatively argue that they are entitled to relief under Landmark I based on the particular facts of this case. As to relief in their cross appeal, respondents assert, "All that is lacking is a correct application of the law as opposed to the misapplied law contained in Landmark I ."
Generally, we are bound by this court's published opinions, including Landmark I , which, incidentally, appears to be sound. See State v. M.L.A. , 785 N.W.2d 763, 767 (Minn. App. 2010) (stating that this court "is bound by supreme court precedent and the published opinions of the court of appeals"), review denied (Minn. Sept. 21, 2010). Moreover, we have already determined that appellants have not shown a basis to reverse the district court's dismissal of their MUFTA claims. Because the district court dismissed the claims against respondents despite its refusal to treat the guaranty mortgage as a valid lien encumbering the Carver County property, any error related to the guaranty mortgage does not affect respondents' substantial rights and does not provide a basis for relief. See Minn. R. Civ. P. 61. We therefore do not address respondents' arguments that the dismissal of appellants' MUFTA claims should have also been based on a determination that the $3,000,000 guaranty mortgage is a valid lien encumbering the Carver County property. Such a determination would not affect the outcome of this appeal, in which we affirm the judgment of dismissal for respondents.
DECISION
Because the district court did not abuse its discretion by amending its finding regarding the market value of the Carver County property and because application of the standard homestead exemption would not change the district court's determination that Mr. Klingelhutz's interest in the property was not an asset under MUFTA, we affirm the dismissal of appellants' MUFTA claims against respondents without determining whether the dismissal should have also been based on a determination that respondents' $3,000,000 guaranty mortgage is a valid lien encumbering the property under MUFTA.
Affirmed.

The district court computed respondents' $798,586.49 nonexempt interest by subtracting respondents' $300,000 homestead exemption, $878,000 in mortgage indebtedness, and the $451,213.51 judgment from the $2,427,800 property valuation.

The parties and the district court refer to the tax treatment available under Minn. Stat. § 273.111 as the Green Acres program, and we do the same. See STRIB IV, LLC v. County of Hennepin , 886 N.W.2d 821, 822-23 (Minn. 2016) (referring to Minn. Stat. § 273.111 as "Minnesota's Green Acres statute").

A table showing the district court's computation of Mr. Klingelhutz's nonexempt interest in the Carver County property at the time of the 2012 transfer is on page 20 of this opinion.

In 2015, MUFTA was amended to the Minnesota Uniform Voidable Transactions Act. See Minn. Stat. §§ 513.41 -.51 (Supp. 2015). The amended statute does not apply to this case because the amendments do not apply to a transfer made before August 1, 2015. See 2015 Minn. Laws ch. 17, § 13, at 164.

The amounts of the homestead exemptions are adjusted periodically based on inflation, as announced and published by the commissioner of commerce. Minn. Stat. § 510.02, subd. 2 (2010) ; Minn. Stat. § 550.37, subd. 4a (2010). At the time of the transfer, it appears that the exemption per homestead could not exceed $360,000, or, if the homestead was "used primarily for agricultural purposes," $900,000. 34 Minn. Reg. 1460, 1460-61 (Apr. 26, 2010). The parties do not argue that the district court erred in using $300,000 and $750,000 as the relevant homestead exemption amounts, and the district court's use of those amounts rather than the inflation-adjusted amounts does not affect our analysis.

Although the parties dispute the amounts used in computing Mr. Klingelhutz's equity, they do not otherwise challenge the computation.

As noted above, it appears that the correct inflation-adjusted homestead exemption that applied at the time of the transfer was $360,000. However, using that amount would not affect the outcome of this appeal because it would result in a -$160,000 nonexempt interest in the Carver County property at the time of the transfer and a conclusion that the property is not an asset under MUFTA.

Landmark I addressed another guaranty mortgage that respondents had executed in favor of The RiverBank pertaining to the RiverBank loan. Id. at 449.