Judy V. BODE, et al., Respondents,

v.

**MINNESOTA DEPARTMENT OF NATURAL RESOURCES, et al., Appellants.**

No. C1–98–2200.

Court of Appeals of Minnesota.

June 1, 1999.

R. Brian Bates, St. Paul, for respondents.

Mike Hatch, Attorney General, Craig L. Engwall, Assistant Attorney General, St. Paul, for appellants.

Considered and decided by WILLIS, Presiding Judge, LANSING, Judge, and SCHUMACHER, Judge.

## OPINION

LANSING, Judge

The Department of Natural Resources appeals a district court's order voiding, for lack of subject-matter jurisdiction, a 1986 district court order that designated a parcel of land as a protected wetland. We conclude that the jurisdiction at issue is not strictly subject-matter jurisdiction, and the landowners are not entitled to relief when they first object to the timeliness of the appeal 18 years after the appeal was filed and 12 years after entry of the judgment. We reverse.

## FACTS

In 1979, the Department of Natural Resources (DNR) tentatively designated wetland 52–26, located in part on land owned by William Bode, a protected wetland. William Bode objected and, in August 1980, a hearings unit was constituted that determined 52–26 did not qualify as a protected wetland under Minn.Stat. § 105.37, subd. 15 (1980). The hearings unit issued the determination in a September 10, 1980, handwritten order. On October 1, 1980, the hearings unit served typed copies of the order by mail. On November 4, 1980, DNR filed a notice of appeal with the district court. In December 1986, the district court reversed the hearings unit's order.

During the next ten years, William Bode and his successors-in-interest, Judy and Linda Bode (Bodes), and the DNR were involved in litigation, primarily over the

validity and enforceability of restoration orders. In April 1996, the Bodes brought this action against DNR, seeking to void DNR's designation of wetland 52–26 as a protected wetland and to obtain damages for loss of farmland resulting from DNR's destruction of a tile drainage system that William Bode installed on wetland 52–26. DNR counterclaimed, alleging that the Bodes continued to drain wetland 52–26 in violation of a court order. In September 1997, the district court granted DNR's motion for summary judgment and dismissed the Bodes' claims; DNR's counterclaim was not dismissed.

In July 1998, the Bodes moved under Minn. R. Civ. P. 60.02(d) to vacate the 1986 district court order designating wetland 52–26 as a protected wetland because DNR failed to bring its 1980 appeal within the statutory time period. The district court granted the Bodes' motion and voided the 1986 judgment for lack of subject-matter jurisdiction. DNR appeals, contending its appeal was timely and, even if its appeal was not timely, collateral estoppel precludes the Bodes' belated jurisdictional challenge.

## ISSUES

I. Does a failure to file an appeal within the statutory time period deprive the court of subject-matter jurisdiction?

II. Did DNR fail to file its appeal within the statutory time period?

III. Is the order void because of a jurisdictional defect?

## ANALYSIS

### I

Subject-matter jurisdiction is "a court's power to hear and determine cases of the general class or category to which the proceedings in question belong." Black's Law Dictionary 1425 (6th ed.1990); see Reid v. Independent Union of All Workers, 200 Minn. 599, 604, 275 N.W. 300, 302 (1937); Sache v. Gillette, 101 Minn. 169, 172, 112 N.W. 386, 387 (1907).

Early Minnesota cases describe subject-matter jurisdiction as "authority to hear and determine a particular class of actions and the particular questions which the court assumes to decide." Robinette v. Price, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943) (citing Reid, 200 Minn. 599, 275 N.W. 300; Sache, 101 Minn. 169, 112 N.W. 386). Under this definition, the district court has original subject-matter jurisdiction over civil and criminal cases, for instance, but not over bankruptcy or administrative agency decisions. See Minn. Const. art. VI, § 3 (providing for district court's original jurisdiction).

Minnesota caselaw has also applied subject-matter-jurisdiction analysis to judgments that do not specifically relate to a class or category of cases, but instead exceed statutory authority, contain procedural irregularities, or are entered erroneously after the expiration of a time period. Ortiz v. Gavenda, 590 N.W.2d 119 (Minn. 1999) (finding no subject-matter jurisdiction when plaintiff bringing wrongful-death action failed to follow procedure required to gain appointment as trustee for next-of-kin); Marzitelli v. City of Little Canada, 582 N.W.2d 904 (Minn.1998) (referring to expiration of appeal period as subject-matter jurisdiction); Greer v. City of Eagan, 486 N.W.2d 470 (Minn.App.1992) (subject-matter jurisdiction did not attach when appeal not timely filed); Park Elm Homeowner's Ass'n v. Mooney, 398 N.W.2d 643, 647 (Minn.App.1987) (holding district court exceeded its statutory authority in a manner "tantamount to granting a judgment without subject-matter jurisdiction").

In some of these cases, the finding of lack of subject-matter jurisdiction is based on an incurable jurisdictional defect, but not necessarily subject-matter jurisdiction. For example, in Andstrom v. Willmar Regional Treatment Ctr., 512 N.W.2d 117 (Minn.App.1994) we held that a time limitation for appealing an agency decision "is jurisdictional and is to be strictly construed." 512 N.W.2d 117, 118 (Minn.App.

1994) (emphasis added) (quoting *Management Five, Inc. v. Commissioner of Jobs & Training*, 485 N.W.2d 323, 324 (Minn. App.1992)); *see also Flame Bar, Inc. v. City of Minneapolis*, 295 N.W.2d 586 (Minn.1980) (strictly construing time limitation). *Andstrom* and *Flame Bar* implicate the procedural exercise of jurisdiction, but not subject-matter jurisdiction in its strict application.

Indisputably, the district court had, and an appellate court now has, the authority to hear and determine appeals from agency decisions. The jurisdictional question is not whether the court had subject-matter jurisdiction over agency appeals, but whether the untimeliness prevented the exercise of jurisdiction. *See Kansas City S. Ry. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir.1980) (a "total want of jurisdiction" must be distinguished from "an error in the exercise of jurisdiction") (citation omitted); *Harvey v. Dots, Inc.*, 561 N.W.2d 192, 194 (Minn.App.1997) (subject-matter jurisdiction implicates power of court to act but does not require determination of whether court acted correctly); *see also* Robert J. Martineau, *Subject Matter Jurisdiction as a New Issue on Appeal: Reining in an Unruly Horse*, 1988 BYU L.Rev. 1, 24 (discussing the holding of several courts "that procedural requirements do not go to subject matter jurisdiction"); Mark A. Hall, *The Jurisdictional Nature of the Time to Appeal*, 21 Ga. L.Rev. 399 (1986) (discussing topic generally).

■ To hold a judgment void for lack of subject-matter jurisdiction on the grounds that it had not been timely filed "blur[s] the distinction * * * between the 'appropriate exercise of power' and the 'absence of power.'" *Mesolella v. City of Providence*, 508 A.2d 661, 665–66 (R.I.1986) (quoting *La Petite Auberge, Inc. v. Rhode Island Comm'n for Human Rights*, 419 A.2d 274, 279 (R.I.1980)); *see Carlisle v. United States*, 517 U.S. 416, 116 S.Ct. 1460, 1470, 134 L.Ed.2d 613 (1996) (Ginsberg, J., concurring) ("It is anomalous to classify time prescriptions, even rigid ones, under the heading 'subject matter jurisdiction.'"). A court may very well have the subject-matter jurisdiction to adjudicate the case, but rules of procedure or statutes of repose prevent the exercise of the jurisdiction.

The dispositions in these cases are not affected by whether the power in question is a lack of subject-matter jurisdiction or some other type of jurisdiction, because the lack of jurisdiction may be dispositive whether or not it is subject-matter jurisdiction. But when we apply subject-matter-jurisdiction analysis under Minn. R. Civ. P. 60.02(d) or Minn. R. Civ. P. 12.08(c), the identification of the precise jurisdictional flaw is critical because of the potential consequences. The rules of civil procedure create powerful exemptions for subject-matter voidness, namely, that an absence of subject-matter jurisdiction may be raised at any point in the proceeding and that a judgment entered by a district court without subject-matter jurisdiction is inherently void and cannot be validated by the passage of time. *See* Minn. R. Civ. P. 12.08(c); *Peterson v. Eishen*, 512 N.W.2d 338, 340 (Minn.1994); *Lange v. Johnson*, 295 Minn. 320, 204 N.W.2d 205 (1973); *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489 (Minn.App.1995).

The Bodes argued successfully to the district court that DNR's untimeliness in filing its appeal of the 1980 wetland determination was a jurisdictional error that deprived the court of subject-matter jurisdiction and made the 1986 judgment void. It is crucial to determine not only whether the record supports the finding of untimeliness, but also to analyze exactly what type of jurisdiction is at issue so that we can properly determine the consequences of the jurisdictional defect. *Compare Housing & Redev. Auth. v. Adelmann*, 590 N.W.2d 327, 331 (Minn.1999) (strict compliance with supplemental notice provisions is not necessary to subject-matter jurisdiction) *with Condemnation by Housing & Redev. Auth. v. Suh*, 553 N.W.2d

115, 118 (Minn.App.1996) (subject-matter jurisdiction cannot attach when persons affected by judgment receive no notice of proceeding), *review denied* (Minn. Nov. 20, 1996).

## II

The specific defect identified by the district court is the failure to comply with a statutory appeal period. In 1980, the Administrative Procedures Act permitted judicial review by a district court of a contested administrative decision. Minn.Stat. § 15.0424, subd. 1 (1980). The statute provided:

> A petition by an aggrieved person for judicial review under this section must be filed with the district court and served on the agency not more than 30 days after the party *receives* the final decision and order of the agency.

*Id.* (emphasis added). The typed copies of the order were mailed on October 1, 1980. *See* Minn.Stat. § 15.0422, subd. 1 (1980) (the decision and order "*shall* be served upon each party * * * *by first class mail*") (emphasis added); *accord Commissioner of Natural Resources v. Lac Qui Parle County Pub. Waters/Wetlands Hearings Unit*, 326 N.W.2d 655, 656 (Minn.1982) (time for appeal commences 30 days after receipt of final typewritten order, not handwritten draft).

■ The Rules of Civil Procedure in effect at that time provided that three days be added to the prescribed period for filing for judicial review and that the first day from which the time period begins to run not be counted in calculating the resulting 33–day filing period. Minn. R. Civ. P. 6.01, 6.05 (1980). Applying these rules, the district court found that DNR's filing on November 4, 1980, 34 days after October 1, 1980, was one day late. *Accord Greer*, 486 N.W.2d at 471. The record supports the district court's finding that the appeal was improperly taken after the expiration of the appeal period. We now turn to the question of whether failure to comply with the statutory time period makes the 1986 judgment void for purposes of rule 60.02(d).

## III

■ A judgment is void if the issuing court lacked jurisdiction over the subject matter, lacked personal jurisdiction over the parties through a failure of service that has not been waived, or acted in a manner inconsistent with due process. 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 2862, at 326–29 (2d ed.1995); *see Kulinski v. Medtronic Bio–Medicus, Inc.*, 577 N.W.2d 499, 502 (Minn.1998) (lack of subject-matter jurisdiction renders judgment void ab initio); *Peterson*, 512 N.W.2d at 338 (lack of personal jurisdiction renders judgment void); *State v. Waldron*, 273 Minn. 57, 66–67, 139 N.W.2d 785, 792 (1966) (a judgment is void for want of due process when circumstances of trial render it a sham or pretense); *Garber v. Bancamerica–Blair Corp.*, 205 Minn. 275, 279, 285 N.W. 723, 726 (1939) (judgment rendered without jurisdiction acquired by service of process is void).

■ DNR argues that the Bodes' request for relief from a void order is an impermissible collateral attack. *See Nussbaumer v. Fetrow*, 556 N.W.2d 595, 599 (Minn.App.1996) ("Minnesota law does not permit the collateral attack of a judgment valid on its face.") (citing *Northwest Holding Co. v. Evanson*, 265 Minn. 562, 569, 122 N.W.2d 596, 601 (1963)), *review denied* (Minn. Feb. 26, 1997). But rule 60.02 is a procedure allowing a *direct*, not a collateral, attack on a final judgment before and after the time for the appeal has expired. 2A David F. Herr & Roger S. Haydock, *Minnesota Practice* § 60.6 (rule permits party on the basis of 13 reasons within six specified grounds to set aside judgment); *see Stumer v. Hibbing General Hosp.*, 242 Minn. 371, 65 N.W.2d 609 (1954) (an attempt to annul, amend, reverse, or vacate a judgment or to declare it void is a direct attack); Dan B. Dobbs, *Beyond Bootstrap:*

*Foreclosing the Issue of Subject–Matter Jurisdiction Before Final Judgment,* 51 Minn. L.Rev. 405, 496 (1967). Although the Bodes' rule 60.02 motion did not have the same name or file number as the original action, specific nomenclature is not essential because relief from a judgment is available either by motion or through filing a separate action. *Eliseuson v. Frayseth,* 290 Minn. 282, 187 N.W.2d 685 (1971).

■ The category of "void" judgments is narrowly construed under Fed.R.Civ.P. 60(b) because of the consequences of the declaration. *Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645, 649 (1st Cir.1972) (parallel federal rule 60(b) "provides the only avenue of relief from final civil judgments other than by appeal or independent action"); *see* 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.44 (3d ed. 1997) ("The concept of void judgments is narrowly construed."). This need to limit the far-reaching effects of voidness has also fostered numerous exceptions to the voidness doctrine. For instance, when a party has had the opportunity to litigate fully the validity of the lower court's decision to exercise its jurisdiction but has chosen not to, the party may not later attack the resulting judgment for voidness under rule 60(b)(4) or under our corresponding state rule 60.02(d). *See Kocher v. Dow Chem. Co.,* 132 F.3d 1225 (8th Cir.1997) (party may not use a 60(b)(4) motion as a substitute for a timely appeal when party fails to challenge lower court's exercise of jurisdiction over aspects of claim); 11 Wright, *supra* § 2862, at 331; *see also DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (federal courts' interpretation of federal rules of procedure may provide guidance on interpretation of parallel state rules of civil procedure).

The Minnesota Supreme Court recognized a related exception in *Zions First Nat'l Bank v. World of Fitness, Inc.,* 280 N.W.2d 22 (Minn.1979), when it held that a defendant who had not appealed from the denial of his motion to quash service could not bring a motion to vacate under rule 60.02(d). The court relied on authority from other jurisdictions holding that a defendant who foregoes an opportunity to assert a jurisdictional argument in the initial proceedings or to appeal an adverse jurisdictional finding cannot bring a rule 60.02(d) motion arguing voidness after the proceedings have been concluded. *Id.* at 25; *see Dorso Trailer Sales, Inc. v. American Body & Trailer, Inc.,* 482 N.W.2d 771 (Minn.1992) (court's failure to consider provision in statute that prevented recovery did not void action when appellant had a full and fair opportunity to raise the statute but did not); *Murray v. Walter,* 269 N.W.2d 47, 50 (Minn.1978) (trial court, by entering judgment, in effect found that statutory requirement had been met, even though it was not specifically raised); *see also B.J.P. v. R.W.P.,* 637 A.2d 74, 79 (D.C.1994) (danger that unless litigants are required to raise subject-matter jurisdiction in first action, litigant could "keep the jurisdictional card in her hip pocket, to be produced only in the event that she loses"); *In re L.M.C.,* 146 Wis.2d 377, 432 N.W.2d 588, 596 (Wis.Ct.App.1988) (public interest in finality of judgments outweighs procedural time defect when party had opportunity to raise issue).

The rationale in *Zions, Dorso,* and *Murray* is consistent with the general approach of the Restatement (Second) of Judgments that restricts post-judgment attacks on subject-matter jurisdiction. Restatement (Second) of Judgments § 12 (1977). The Restatement's position is based on the importance of finality in judgments and a recognition that by adjudicating an action, a court has tacitly determined it has subject-matter jurisdiction. *See Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938) (in rendering a judgment, court "tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter"); Restatement (Second) of Judgments § 12 cmt. a (discussing finality). Allowing a party to raise subject-matter jurisdiction

after an action makes the party in effect "a public agent for enforcing the rules of jurisdiction." Restatement (Second) of Judgments § 12 cmt. d.

When a judgment has been entered that is not a plain usurpation of authority or a violation of due process, a societal interest in finality is significant, and it is equally significant to create procedures that require arguments on jurisdictional issues to be raised in the original litigation. *Kansas City S. Ry.*, 624 F.2d at 826 (when challenge is to erroneous interpretation of statutory jurisdiction, the policy favoring certainty in judicial resolution of controversies prevails); *see Simons v. Schiek's, Inc.*, 275 Minn. 132, 145 N.W.2d 548 (1966) ("we must consider with some hesitation vacating a judgment entered * * * almost three years earlier"). As Dobbs observed:

> A rule that voids a solemn judgment whenever one of the parties chooses to attack it is a rule asking for trouble. A judgment ought to settle a dispute, and rights and titles derived from a judgment today ought not to be overturned twenty years from now. No society can be stable if judicially secured rights are not secure at all.

Dan B. Dobbs, *The Validation of Void Judgments: The Bootstrap Principle*, 53 Va. L.Rev. 1003, 1003 (1967).

 On the basis of the caselaw and the supporting commentary, we conclude, first, that the 1986 judgment was not void for subject-matter jurisdiction as that term is applied in its strict sense, and, secondly, because the Bodes had a full and fair opportunity to raise the procedural deficiency of the notice of appeal before or during the hearing on the merits, the 1986 judgment is not void for other jurisdictional reasons. William Bode, the Bodes' predecessor-in-interest, appeared and was represented in the 1986 hearing. In the 1986 appeal that resulted in the challenged judgment, Bode was a named party and an attorney entered an appearance on his behalf. William Bode had ample opportunity to challenge the lateness of DNR's appeal

at that time. The law's preference for finality precludes the Bodes from waiting until 18 years after the filing of the appeal to challenge the district court's erroneous exercise of jurisdiction.

## DECISION

The judgment vacating the 1986 judgment as void for lack of subject-matter jurisdiction is reversed.

**Reversed.**