*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1940**

State of Minnesota,
Appellant,

vs.

C. H. T.,
Respondent.

**Filed July 20, 2015
Affirmed
Larkin, Judge**

Wright County District Court
File No. 86-KX-05-002019

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas N. Kelly, Wright County Attorney, Greg T. Kryzer, Assistant County Attorney, Buffalo, Minnesota (for appellant)

Kelly J. Keegan, Brandt Criminal Defense, Anoka, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

## U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

Appellant State of Minnesota challenges the district court's order directing it to expunge records regarding charges against respondent that were dismissed for lack of

probable cause.  Appellant argues that (1) respondent failed to properly invoke the district court's jurisdiction; (2) the district court abused its discretion by ordering expungement; and (3) the district court exceeded its authority when granting relief.  We affirm.

**FACTS**

In June 2005, appellant State of Minnesota charged respondent C.H.T. with three counts of second-degree criminal sexual conduct.  The district court dismissed the charges for lack of probable cause.

In April 2014, C.H.T. petitioned the district court to expunge all records regarding the dismissed charges.  The petition stated that C.H.T. "respectfully requests an expungement based on the petition and attached affidavit."  The affidavit, which was signed under oath and notarized, provided factual information in support of expungement.  Two months later, C.H.T. withdrew his petition because his attorney failed to disclose one of C.H.T.'s prior convictions in the affidavit.  C.H.T. resubmitted the petition with an updated affidavit, which stated that he was convicted of third-degree criminal sexual conduct in December 2000.

The district court granted C.H.T.'s petition, after determining that the state had "not shown any benefit to the public in maintaining records of the [2005] allegations" and because C.H.T. "is likely to experience negative treatment based on the allegations . . . even though the case was resolved in his favor."  The state appeals.[1]

---

[1] C.H.T. did not file a respondent's brief.  On March 26, 2015, this court ordered the case to proceed pursuant to Minn. R. Civ. App. P. 142.03 (providing that if respondent fails to file a brief, the case shall be determined on the merits).

# DECISION

## I.

The state contends that C.H.T. "failed to meet the [statutory] content and service requirements" for an expungement petition and that his petition therefore "must be dismissed for lack of subject-matter jurisdiction." We review jurisdictional issues de novo. *See Elbert v. Tlam*, 830 N.W.2d 448, 450 (Minn. App. 2013), *review denied* (Minn. Sept. 25, 2013) (applying de novo review to determine whether a procedural defect prevents a district court from exercising jurisdiction).

Minn. Stat. § 609A.03, subd. 2(a) (2014), provides that "[a] petition for expungement shall be signed under oath by the petitioner" and specifies that the petition "shall state" certain information. C.H.T. did not sign his petition or include the statutorily required information in the petition. Instead, he submitted a signed, sworn, and notarized affidavit in support of his petition, which contained the required information. The district court noted that it considered C.H.T.'s petition and affidavit "together as the petition described in Minn. Stat. § 609A.03, subd. 2," and that those documents "include the information required by Minn. Stat. § 609A.03, subd. 2." The state argues that because C.H.T. did not include the statutorily required information in a signed petition, C.H.T. failed to properly invoke the district court's jurisdiction.

This court has explained the distinction between subject-matter jurisdiction and jurisdictional defects as follows:

> Subject-matter jurisdiction is a court's power to hear and determine cases of the general class or category to which the proceedings in question belong. . . .

3

Minnesota caselaw has also applied subject-matter-jurisdiction analysis to judgments that do not specifically relate to a class or category of cases, but instead exceed statutory authority, contain procedural irregularities, or are entered erroneously after the expiration of a time period. . . .

In some of these cases, the finding of lack of subject-matter jurisdiction is based on an incurable jurisdictional defect, but not necessarily subject-matter jurisdiction. For example, in *Andstrom v. Willmar Regional Treatment Ctr.*, 512 N.W.2d 117 (Minn. App. 1994), we held that a time limitation for appealing an agency decision "is *jurisdictional and is to be strictly construed*." 512 N.W.2d 117, 118 (Minn. App. 1994) (emphasis added) (quoting *Mgmt. Five, Inc. v. Comm'r of Jobs & Training*, 485 N.W.2d 323, 324 (Minn. App. 1992)); *see also Flame Bar, Inc. v. City of Minneapolis*, 295 N.W.2d 586 (Minn. 1980) (strictly construing time limitation). *Andstrom* and *Flame Bar* implicate the procedural exercise of jurisdiction, but not subject-matter jurisdiction in its strict application.

. . . .

. . . A court may very well have the subject-matter jurisdiction to adjudicate the case, but rules of procedure or statutes of repose prevent the exercise of the jurisdiction.

*Bode v. Minn. Dept. of Natural Res.*, 594 N.W.2d 257, 259-60 (Minn. App. 1999) (quotation omitted), *aff'd*, 612 N.W.2d 862 (Minn. 2000).

For the four reasons that follow, the state fails to persuade us that C.H.T.'s use of an affidavit to supplement his unsigned petition constitutes an incurable jurisdictional defect. First, the cases on which the state relies are distinguishable. For example, *Petrafeso v. McFarlin* involved an election contest, and the supreme court noted that it had "consistently held that the right to contest an election is purely statutory and that in order for the district court to acquire jurisdiction the provisions of the statute relating to filing and serving of the notice must be strictly followed." 296 Minn. 120, 124, 207 N.W.2d 343, 345 (1973). Unlike *Petrafeso*, we are unaware of precedent requiring strict

4

compliance with statutory expungement requirements. *Land O'Lakes Dairy Co. v. Hintzen* involved a statute that required automatic dismissal if certain statutory requirements were not met. 225 Minn. 535, 537, 31 N.W.2d 474, 475-76 (1948). Unlike *Hintzen*, the expungement statute does not provide for automatic dismissal if statutory requirements are not met. *State v. Boucher* and *City of Austin v. Wright* involved statutory and municipal-charter prerequisites to an appeal in a condemnation action. 171 Minn. 297, 299, 214 N.W. 30, 31 (1927); 262 Minn. 301, 305-06, 114 N.W.2d 584, 587 (1962). Unlike *Boucher* and *Wright*, the expungement action in district court was not an appeal with an attendant need to perfect appellate jurisdiction. *See Wright*, 262 Minn. at 308, 114 N.W.2d at 589 ("[W]here statutes governing condemnation proceedings provide a review by appeal and the conditions to the right of appeal therein are not observed, the court does not acquire jurisdiction.").

Moreover, in each of those cases, the relevant prerequisite had a timing component. *See Petrafeso*, 296 Minn. at 124, 207 N.W.2d at 346 ("It is essential that [an election] contestant perform within a specified time and manner the acts that are necessary to invoke the court's jurisdiction."); *Hintzen*, 225 Minn. at 537, 31 N.W.2d at 475 (noting that a statute required payment of taxes if the case was not resolved by a certain date); *Boucher*, 171 Minn. at 299, 214 N.W. at 31 ("[T]he statute conditions the right of appeal upon the filing of objections within the time specified."); *Wright*, 262 Minn. at 303 n.1, 308, 114 N.W.2d at 585 n.1, 589 ("The appeal in the instant case must be taken in accordance with the provisions of the Austin charter which require the filing of objections [before confirmation of the award]."). This case does not involve any filing

5

or prehearing deadlines. The only timing requirement is that a hearing on an expungement petition "shall be held no sooner than 60 days after service of the petition." Minn. Stat. § 609A.03, subd. 4 (2014). In sum, the authorities cited by the state do not convince us that the district court was required to dismiss C.H.T.'s expungement action based on C.H.T.'s defective petition.

Second, other statutes show that when the legislature intends to require strict compliance with statutory requirements as a prerequisite to invocation of the district court's jurisdiction, the legislature expressly says so. For example, Minn. Stat. § 169A.63, subd. 8(e) (2014), imposes several requirements on a person filing a demand for a judicial determination regarding civil forfeiture of a motor vehicle. The statute expressly provides that no action for the return of a seized vehicle may be maintained "unless the person has complied with this subdivision." Minn. Stat. § 169A.63, subd. 8(f) (2014). Strict compliance with statutory requirements is similarly required when a person seeks a judicial determination regarding forfeiture of property seized in connection with a controlled-substance seizure. *See* Minn. Stat. § 609.5314, subd. 3(a) (outlining requirements), subd. 3(b) (providing that no action may be maintained "unless the person has complied with this subdivision") (2014). Although this court enforces statutory language conditioning jurisdiction on strict compliance with statutory requirements, the expungement statute does not require strict compliance. *Cf. Garde v. One 1992 Ford Explorer XLT*, 662 N.W.2d 165, 166-67 (Minn. App. 2003) (holding that the district court did not have jurisdiction over a forfeiture procedure where the claimant did not comply with statutory requirements, noting that "[t]he plain language of the

6

statute provides that a claimant 'may not' maintain an action for judicial determination of forfeiture without complying with the statutory requirements.").

Third, to the extent the state analogizes a petition for expungement to a complaint in a civil action and argues that the same pleading requirements should apply, the state's argument is not persuasive. "A copy of any written instrument which is an exhibit to a pleading is a part of the statement of claim or defense set forth in the pleading." Minn. R. Civ. P. 10.03. Thus, when determining whether a party has included adequate factual allegations to meet pleading requirements, courts "consider the complaint in its entirety, including the facts alleged throughout the complaint and the attachments to the complaint." *Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of Brainerd*, 821 N.W.2d 184, 192 (Minn. 2012). The district court's consideration of C.H.T.'s petition and affidavit "together as the petition described in Minn. Stat. § 609A.03, subd. 2," is consistent with that approach.

And fourth, the state was not prejudiced by C.H.T.'s failure to strictly comply with statutory requirements. The state concedes, as the district court reasoned, that C.H.T.'s signed and sworn affidavit set forth all of the content required under section 609A.03, subdivision 2(a). The state also concedes that its substantive argument against expungement would not have been any different if C.H.T. had included the statutorily required information in the petition, instead of in the affidavit.

For all of those reasons, we hold that C.H.T.'s failure to strictly comply with section 609A.03, subdivision 2(a), is not an incurable defect that prevented the district court from exercising its jurisdiction.

7

**II.**

The state contends that C.H.T.'s prior third-degree criminal-sexual-conduct conviction and his initial failure to disclose that conviction clearly and convincingly show that the interests of the public and public safety outweigh his interest in receiving an expungement. C.H.T. sought expungement under Minn. Stat. § 609A.02, subd. 3(a)(1) (2014), which provides that a person may petition for expungement of a criminal record if the matter was "resolved in favor of the petitioner." The district court "shall grant the petition . . . unless the agency or jurisdiction whose records would be affected establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn. Stat. § 609A.03, subd. 5(b) (2014). To make that determination, the district court considers several enumerated factors—including "the risk, if any, the petitioner poses to individuals or society" and "the petitioner's criminal record"—as well as any "other factors deemed relevant by the court." *Id.*, subd. 5(c) (2014). Appellate courts review a district court's decision to expunge criminal records for an abuse of discretion. *State v. M.D.T.*, 831 N.W.2d 276, 279 (Minn. 2013) (quotation omitted). "A court abuses its discretion when it acts arbitrarily, without justification, or in contravention of the law." *State v. Mix*, 646 N.W.2d 247, 250 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002).

The district court concluded that C.H.T.'s omission of the 2000 conviction "was a mistake, apparently made by his attorney," "was not willful or intentional," and "[did] not prejudice" C.H.T.'s petition. The district court rejected the state's arguments that the omission shows that C.H.T. is not reformed and warrants denial of his petition. The

8

district court noted that the state offered "no other suggestion for why the public has an interest in maintaining records related to" C.H.T.'s 2005 dismissed charges and therefore concluded that the state "has not shown any benefit to the public in maintaining [the] records." The district court also noted that "[e]ven if records in this matter are sealed, the public has the benefit of records of [C.H.T.'s] prior criminal sexual conduct conviction." The state does not explain how the district court abused its discretion; the state simply reiterates its substantive argument against expungement. In fact, at oral argument to this court, the state conceded that it cannot prevail under the abuse-of-discretion standard.

The district court considered the state's argument against expungement, and its reasons for rejecting that argument are not arbitrary, without justification, or in contravention of the law. We therefore have no basis to reverse the district court's discretionary decision to grant expungement under Minn. Stat. § 609A.03, subd. 5(b). Even if another court might have ruled differently, we cannot conclude that the district court abused its discretion. *See State v. Johnson*, 568 N.W.2d 426, 434 (Minn. 1997) ("In keeping with our standard of review, while the case at bar is close, we will not supplant our judgment for a reasonable exercise of the district court's discretion.").

## III.

The state contends that the district court exceeded its authority when granting relief. Specifically, the state challenges a portion of the district court's order requiring the Wright County Attorney to "seal or otherwise remove references contained in its files related to [C.H.T.'s] arrest and subsequent proceedings in this matter so as to preclude any public access to such references." The state argues that the expungement statute does

9

not authorize the district court to order redaction or removal of references and that the district court therefore exceeded its statutory authority by ordering the Wright County Attorney to "otherwise remove references."

"Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court." *State v. Johnson*, 743 N.W.2d 622, 625 (Minn. App. 2008). Minn. Stat. § 609A.01 (2014) provides that the remedy available under the expungement chapter "is limited to a court order sealing the records and prohibiting the disclosure of their existence or their opening except under court order or statutory authority." The statute further provides that "[n]othing in [the expungement] chapter authorizes the destruction of records or their return to the subject of the records." Minn. Stat. § 609A.01.

It is not clear to us that the district court's order to "otherwise remove references" means to destroy or return records.[2] Given that the statute does not authorize destruction or return of records and that the order to "otherwise remove references" was an alternative to sealing, we read the phrase to mean action that is similar to sealing. We note that if the state seals the records—as it indicated it will if this court affirms the district court's order—there is no need for the state to "otherwise remove references." For those reasons, we do not disturb the district court's order for relief.

**Affirmed.**

---

[2] The state acknowledges that the district court's order is not clear, noting that it "appears" that the district court ordered redaction or removal. But the state did not ask the district court to clarify its order.