*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1213**

In the Matter of the Civil Commitment of: Christopher Loyd Ivey.

**Filed March 2, 2026**
**Affirmed; motion denied**
**Johnson, Judge**

Carlton County District Court
File No. 09-P2-03-001548

Christopher Ivey, Moose Lake, Minnesota (*pro se* appellant)

Keith Ellison, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota; and

Jeffrey Boucher, Carlton County Attorney, Carlton, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Ross, Judge; and Johnson, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

In 2004, Christopher Loyd Ivey was civilly committed as a sexually dangerous person and a sexual psychopathic personality. In 2025, Ivey filed a motion for relief from the 2004 commitment order pursuant to rule 60.02 of the rules of civil procedure. He argued that, during the commitment proceedings that resulted in the commitment order, he was not allowed to waive his statutory right to counsel and represent himself. We conclude that the district court did not err by denying the motion on the grounds that the commitment order is not void and is not inequitable. Therefore, we affirm.

## FACTS

Ivey was convicted of multiple crimes, including murder and criminal sexual conduct, in Minnesota and Germany in the 1990s. *In re Ivey*, 687 N.W.2d 666, 668 (Minn. App. 2004). In November 2003, as Ivey was being deported from Germany to the United States, Carlton County filed a petition to have him civilly committed as a sexually dangerous person and a sexual psychopathic personality. *Id.* In December 2003, the district court appointed an attorney to represent him in the commitment proceeding. *Id.* at 669; *see also In re Irwin*, 529 N.W.2d 366, 371 (Minn. App. 1995) (stating that patient has right to counsel under Minn. Stat. § 253B.03, subd. 9 (1994)), *rev. denied* (Minn. May 16, 1995). The record of the commitment proceedings does not indicate that Ivey ever objected to the appointment of counsel, sought to waive his right to counsel, or attempted to discharge his court-appointed attorney. In May 2004, the district court granted the county's petition and ordered Ivey's civil commitment. *Ivey*, 687 N.W.2d at 669.

In March 2025, Ivey filed a motion for relief from the 2004 commitment order pursuant to rule 60.02 of the rules of civil procedure. His motion is based on *In re Civil Commitment of Benson*, 12 N.W.3d 711 (Minn. 2024), in which the supreme court held that a respondent in a civil-commitment proceeding may waive the right to counsel in Minnesota Statutes section 253D.20 and represent himself. *Id.* at 720. Accordingly, the supreme court concluded that Benson was entitled to a new hearing before the commitment appeal panel on his petition for a reduction in custody. *Id.* at 721. Ivey filed an affidavit with his motion in which he states that he "did not request the appointment of counsel" and "was never afforded a hearing to waive counsel." He further states that he "was informed

2

. . . that no one is allowed to represent himself at a civil commitment hearing." Relying on the *Benson* opinion, Ivey requested that his 2004 commitment order be vacated and that the district court conduct a new hearing on the county's civil-commitment petition.

In June 2025, the district court filed an 18-page order in which it denied Ivey's motion. Ivey appeals.

## DECISION

Ivey argues that the district court erred by denying his rule 60.02 motion to vacate the 2004 commitment order.

Rule 60.02 provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representatives from a final judgment (other than a marriage dissolution decree), order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons:
>
> (a)　Mistake, inadvertence, surprise, or excusable neglect;
>
> (b)　Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial pursuant to Rule 59.03;
>
> (c)　Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (d)　The judgment is void;
>
> (e)　The judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(f)     Any other reason justifying relief from the operation of the judgment.

Minn. R. Civ. P. 60.02.  A party seeking relief under rule 60.02 has the burden of proof. *City of Barnum v. Sabri*, 657 N.W.2d 201, 205 (Minn. App. 2003).  This court applies an abuse-of-discretion standard of review to a district court's denial of a rule 60.02 motion. *In re Civil Commitment of Johnson*, 931 N.W.2d 649, 655 (Minn. App. 2019), *rev. denied* (Minn. Sept. 17, 2019).

Both in the district court and on appeal, Ivey has made two arguments for relief based on two paragraphs of rule 60.02: paragraph (d) and paragraph (e).  We address each argument in turn.

## A.  Rule 60.02(d)

Ivey first argues that the district court erred by denying his rule 60.02 motion to the extent that it is based on paragraph (d).  He contends that he is entitled to a new civil-commitment hearing on the ground that the 2004 commitment order is void.

For purposes of rule 60.02(d), a judgment or order may be deemed void for any one of three reasons: "if the issuing court [1] lacked jurisdiction over the subject matter, [2] lacked personal jurisdiction over the parties through a failure of service that has not been waived, or [3] acted in a manner inconsistent with due process." *Bode v. Minnesota Dep't of Nat. Res.*, 594 N.W.2d 257, 261 (Minn. App. 1999), *aff'd*, 612 N.W.2d 862 (Minn. 2000).

Ivey does not argue that the district court lacked either subject-matter jurisdiction or personal jurisdiction with respect to the 2003-2004 commitment proceedings.  Any such

4

argument would be barred by the doctrine of issue preclusion because Ivey made both arguments on direct appeal from the 2004 commitment order and this court rejected the arguments. *Ivey*, 687 N.W.2d at 669-71.

Ivey limits his argument concerning paragraph (d) to the third type of void order: an order issued after a district court "acted in a manner inconsistent with due process." *See Bode*, 594 N.W.2d at 261. He contends that the district court denied him due process by depriving him of an opportunity to waive his statutory right to counsel and represent himself during the 2003-2004 civil-commitment proceedings. Ivey cites *Benson* in making this argument.

Ivey's reliance on *Benson* is problematic for two reasons. First, the supreme court made clear in *Benson* that the right to waive counsel and represent oneself is a right arising from a *statutory* right to counsel, not a right based on the *constitutional* guarantee of due process. 12 N.W.3d at 715-21; *see also In re Civil Commitment of Urbanek*, ___ N.W.3d ___, ___, 2025 WL 3623348, at *3 (Minn. App. Dec. 15, 2025), *petition for rev. filed* (Minn. Dec. 29, 2025). Indeed, the supreme court expressly stated that it was avoiding that constitutional issue. *Benson*, 12 N.W.3d at 717-18; *see also Urbanek*, 2025 WL 3623348, at *3.

Second, the statute at issue in *Benson* is different from the statute that applied to Ivey in 2003 and 2004. The *Benson* court held that Minnesota Statutes section 253D.20 (2022) "establishes a waivable right to counsel." 12 N.W.3d at 720 (emphasis omitted). But section 253D.20 applies only to a person who already has been committed and is a party to a proceeding under chapter 253D. *See* Minn. Stat. § 253D.20 (2024). Ivey's

5

statutory right to counsel arose from a different statute, which applies only to an initial commitment proceeding under chapter 253B. *See* Minn. Stat. § 253B.07, subd. 2c (2002). This court has held that *Benson* does not apply to commitment proceedings in which the statutory right to counsel arose from section 253B.07, subdivision 2c. *Urbanek*, 2025 WL 3623348, at *3-4.

Even if we were to assume that *Benson* applies to Ivey's commitment proceedings, his argument wound encounter other obstacles. In applying rule 60.02(d), the district court cited *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), in which the United States Supreme Court explained that a judgment or order may be void under the analogous federal rule "in the rare instance where a judgment is premised either on a certain type of jurisdictional error *or on a violation of due process that deprives a party of notice or the opportunity to be heard*." *Id.* at 271 (emphasis added) (interpreting Fed. R. Civ. P. 60(b)(4)). Ivey questions whether this part of *Espinosa* is consistent with Minnesota law inasmuch as the Minnesota Supreme Court never has relied on *Espinosa* to interpret Minnesota's rule 60.02(d). Ivey is correct that *Espinosa* is a case involving federal law, not Minnesota law. In any event, it does not appear that the principles discussed in *Espinosa* would narrow or limit the scope of the third type of void judgment or order recognized by our case law: a judgment entered or order filed after "the issuing court . . . acted in a manner inconsistent with due process." *See Bode*, 594 N.W.2d at 261.

Assuming without deciding that *Espinosa* informs the interpretation of Minnesota rule 60.02(d), Ivey's argument fails. He does not contend that he was deprived of notice. He contends that he was deprived of an opportunity to be heard only in the sense that he

6

was "deprived of his right to present his own defense" and "to make [his] own defense personally." In support of that contention, he cites *Faretta v. California*, 422 U.S. 806 (1975), which recognized a constitutional right of self-representation based on the Sixth Amendment right to counsel. *Id.* at 807, 814, 818-21, 832. This court recently concluded that a respondent in a civil-commitment proceeding does not have a constitutional right of self-representation arising from either the Sixth Amendment right to counsel or the Fourteenth Amendment right to due process. *Urbanek*, 2025 WL 3623348, at *4. In light of our *Urbanek* opinion, Ivey cannot prove that the district court "acted in a manner inconsistent with due process" during the 2003-2004 commitment proceedings. *See Bode*, 594 N.W.2d at 261.

Furthermore, even if Ivey's theory were viable, his argument would fail for lack of evidence. Ivey did not introduce any evidence that he objected to the appointment of counsel, sought to waive his right to counsel, or attempted to discharge his court-appointed attorney. The facts of this case are very similar to those of *Urbanek*, in which the civil-commitment respondent "did not object to the order appointing counsel," did not "seek to waive counsel and represent himself," and "provided no evidence to support his assertion that he wished to represent himself at his initial commitment proceeding, or that he was prevented from making such request." 2025 WL 3623348, at *6. Consequently, this court concluded that there was no error in the denial of Urbanek's rule 60.02 motion. *Id.* at *7. Because Ivey has not submitted evidence that he asserted a right of self-representation during his 2003-2004 commitment proceedings, he cannot establish that the district court

7

violated his right to due process, even if his due-process rights were understood to include a right of self-representation.

Thus, the district court did not err by denying Ivey's rule 60.02 motion on the ground that the judgment entered on the 2004 commitment order is not void.

## B. Rule 60.02(e)

Ivey also argues that the district court erred by denying his rule 60.02 motion to the extent that it is based on paragraph (e).

"Rule 60.02(e) consists of three clauses, which provide three legal bases for relief." *In re Civil Commitment of Moen*, 837 N.W.2d 40, 48 (Minn. App. 2013). Ivey relies only on the third clause, which provides that a district court may grant a party relief from a judgment or order if "it is no longer equitable that the judgment should have prospective application." Minn. R. Civ. P. 60.02(e).

"The third clause of rule 60.02(e) reflects 'the historic power of the court of equity to modify its decree in light of changed circumstances.'" *Moen*, 837 N.W.2d at 48 (quoting *Sabri*, 657 N.W.2d at 205). As a general rule, the "changed circumstances" that may give rise to relief under rule 60.02(e) are "(1) changes in operative facts, (2) changes in the relevant decisional law, and (3) changes in any applicable statutory law." *Id.* at 48-49 (quotation omitted). In ruling on a motion based on paragraph (e), a district court must "determine whether changed circumstances exist and, if so, whether they render it inequitable for the judgment to have prospective application." *Sabri*, 657 N.W.2d at 207. Whether the prospective effect of a judgment is no longer equitable "must be determined on a case-by-case basis." *Id.*

8

Ivey contends that the supreme court's holding in *Benson* constitutes a change in circumstances. The district court agreed with Ivey on that point, stating that "[t]here is little doubt that the decision in *In re Benson* constitutes a significant change in circumstances." The district court proceeded to consider whether "it is no longer equitable that the judgment should have prospective application." *See* Minn. R. Civ. P. 60.02(e). The district court reasoned as follows:

> The respondent has not identified any additional evidence that he would have offered if he was allowed to represent himself. The respondent has not identified any additional witnesses who would have testified in the commitment hearings if he was allowed to represent himself. Nor has the respondent explained how he would have responded differently to the petition if he had been allowed to represent himself. The respondent seeks relief based solely on a change in decisional law. Therefore, the court does not find it inequitable to continue to hold the respondent under the indefinite commitment order.

Ivey challenges the district court's decision by asserting that, after finding changed circumstances, the district court should have granted him relief without considering equitable factors. He contends that the determination of changed circumstances "should have ended the court's inquiry." He further contends that the district court erred because it "erroneously considered equitable factors, which [he asserts] do not apply when there is a change in the law, especially in a case such as this that is not a case in equity."

Ivey's argument is plainly inconsistent with the applicable rule and Minnesota caselaw. The text of the rule allows for relief from a judgment if "it is no longer *equitable* that the judgment should have prospective application." Minn. R. Civ. P. 60.02(e) (emphasis added). And, as stated above, "[t]he third clause of rule 60.02(e) reflects 'the

9

historic power of the court of equity to modify its decree in light of changed circumstances.'" *Moen*, 837 N.W.2d at 48 (quoting *Sabri*, 657 N.W.2d at 205). In exercising that authority, a district court must "strike a delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of *all* the facts." *Sabri*, 657 N.W.2d at 207 (quotation omitted).

In this case, the district court appropriately engaged in a case-specific analysis of facts that are pertinent to Ivey's request for relief. In short, the district court considered whether Ivey's evidence or arguments in the 2003-2004 commitment proceedings would have been any different if he had been allowed to represent himself (assuming that he had expressed an interest in doing so). The district court was well within its discretion in the manner in which it identified the relevant facts and weighed equitable factors.

Thus, the district court did not err by denying Ivey's rule 60.02 motion by concluding that it would not be inequitable for the judgment to have prospective application.

### C. Motion to Strike

Before concluding, we must rule on a pending motion: Ivey's motion to strike a letter that respondent Carlton County filed with this court pursuant to rule 128.05 of the rules of appellate procedure.

The applicable rule provides:

> If pertinent and significant authorities come to a party's attention after the party's brief has been filed or after oral argument but before decision, a party may promptly file a letter with the clerk of the appellate courts setting forth the citations. The letter must state without argument the reasons for the

10

> supplemental citations, referring either to the page of the brief
> or to the point argued orally. . . .

Minn. R. Civ. App. P. 128.05. "The rule contemplates a very short submission, simply providing the citation of the new authority and enough information so the court can determine what previously made argument it relates to." *Id.*, 2000 comm. cmt.

Ivey contends that respondent's October 7, 2025 letter does not comply with rule 128.05 because the letter does not refer to any page numbers of respondent's brief. Ivey cites no caselaw for the proposition that a letter filed pursuant to rule 128.05 always must include such page numbers. The rule indicates that references to page numbers are not always required because the rule expressly provides the option of "referring either to the page of the brief *or to the point argued orally*." Minn. R. Civ. App. P. 128.05 (emphasis added). The comment to the rule further indicates that a rule 128.05 letter should be "very short," with only a citation and "enough information" to allow the court to understand the relevance of the supplemental authority. *Id.*, 2000 comm. cmt.

In this case, respondent submitted a letter with the caption and citation of a nonprecedential opinion of this court, which respondent described as "a sexually dangerous person and sexual psychopathic personality rule 60.02 case involving similar issues to those raised in this case." The letter also states that the nonprecedential opinion "pertains to appellant's and respondent's arguments in this case related to his right to self-representation at his civil commitment trial and structural error arguments." The letter's reference to two issues briefed by the parties allows this court to determine the points to

11

which the supplemental authority relates.  Most importantly, respondent's letter does not violate the without-argument requirement of rule 128.05.

Thus, we deny Ivey's motion to strike.

**Affirmed; motion denied.**