*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1635**

Roger Sand,
Respondent,

vs.

Sand Pine Pheasants Family Recreation, LLC, et al.,
Appellants.

**Filed June 24, 2024
Affirmed
Ede, Judge**

Stearns County District Court
File No. 73-CV-21-5760

David T. Johnson, Amundson, Johnson & Schrader, P.A., Paynesville, Minnesota (for respondent)

Patrick C. Summers, DeWitt LLP, Minneapolis, Minnesota (for appellants)

Considered and decided by Cochran, Presiding Judge; Ede, Judge; and Smith, John, Judge.[*]

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this appeal from final judgment following a court trial in a partnership dispute, appellants challenge the district court's: (1) division of the partnership's assets;

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(2) determination that there was insufficient evidence to find that appellant proved certain counterclaims against respondent; (3) finding that appellant breached the partnership agreement and his obligation of good faith and fair dealing; and (4) denial of a right of first refusal to each partner on future sales of former partnership property. Because we conclude that the record supports the district court's relevant findings of fact and conclusions of law and that the district court did not abuse its discretion in equitably dividing the partnership's assets in kind, we affirm.

## FACTS

The following factual recitation is based on the evidence adduced at trial, viewed in the light most favorable to the district court's findings.

### *Formation of the Partnership and Sand Pine Pheasants*

In January 2000, Werner Sand and Eileen Sand formed the Sand Pines Dairy general partnership (the partnership) to operate their family dairy farm. Werner[1] and Eileen have six children, including appellant Keith Sand and respondent Roger Sand. Werner and Eileen contributed assets to the partnership, including 235 acres of land, a house, farm machinery, and livestock. Roger has lived in the house on the partnership's land since the partnership agreement was created.

Werner and Eileen later sold a portion of their partnership interests to Keith and Roger. Each son purchased a one-third interest, while Werner and Eileen jointly retained a one-third interest.

---

[1] Because the family members share a last name, we refer to each of them by their first name.

In January 2003, Keith formed appellant Sand Pine Pheasants Family Recreation LLC (Sand Pine Pheasants) to provide pheasant hunting to the public. Neither Roger nor the partnership is an owner of Sand Pine Pheasants, but Sand Pine Pheasants operates on real property owned by the partnership. In 2007, the partnership split the real property into two tax parcels to permit Sand Pine Pheasants to construct buildings on the property for its business. As of June 2022, the value of one parcel was $1,000,000 and the value of the other was $750,000.

After Werner died in 2013, Keith, Roger, and Eileen each continued as one-third-interest partners. In April 2020, they signed an agreement detailing each partner's duties. Eileen was listed as semi-retired. Roger served as herd manager and was responsible for milking cows, managing breeding records, coordinating employee work schedules, mixing feed, feeding cows and young stock, bedding calves and cows, and maintaining farmyard facilities. And Keith acted as manager of crops, equipment, and accounting. In that role, he handled incoming and outgoing invoices, completed payroll, maintained all equipment, and was responsible for planting, harvesting, and rotating crops.

In 2016, Keith offered to purchase Eileen's partnership interest and paid her $1,500 per month for about seven straight months. Keith later followed up with a formal purchase agreement to document the terms of a supposed oral agreement he had reached with Eileen, but she refused to sign.

Instead, in December 2020, Keith and Roger bought equal shares of Eileen's partnership interest. As a result, Keith and Roger each held a one-half interest in the partnership.[2]

***Lawsuit***

In July 2021, Roger filed suit against Keith, the partnership, and Sand Pine Pheasants. Roger sought to dissolve and wind up the partnership, asserting that, "as 50-50 partners in Sand Pines Dairy, each partner is entitled to one-half of the partnership assets after all debts are paid and all assets counted." He further maintained that "[p]artnership assets . . . include a reasonable rental for the real and personal property utilized by Sand Pine Pheasants." Roger demanded an accounting from Keith of the partnership's financial records and documents. Roger also alleged that Keith had breached fiduciary duties by "using the land and machinery owned by the partnership for the purpose of running a game farm and deriving personal profit and benefit to the detriment of the partnership," and that Keith otherwise breached the partnership agreement.

Keith filed an answer in August 2021, asserting several counterclaims. Keith alleged that Roger had breached the partnership agreement and the duty of loyalty and care by "misappropriat[ing] and convert[ing] for his own personal use property of the partnership[,]" including large amounts of money, dividend checks, cull cows and bull calves, the house located on the partnership's real property, and other partnership-owned equipment and products. Keith also alleged that Roger converted partnership property,

---

[2] Keith has assigned his interest in the partnership to his living trust, which has agreed to be bound by the district court's order.

worth more than $50,000, and property owned by Keith, valued at more than $1,000. Keith requested the following relief: an accounting of all partnership property that was misappropriated, converted, or sold by Roger; payment for goods and services provided by Keith; and reimbursement of expenses paid to Roger by the partnership for personal expenses and housing, as well as reimbursement for Roger's use of the partnership's real property.

***Court Trial***

The matter proceeded to a court trial, which the district court held over four days in January 2023. The district court received various trial exhibits into evidence, including the partnership agreement, tax returns, and photos of the partnership's dairy operation. Roger testified and called several witnesses, including Keith. Keith likewise presented witnesses, including a farm-business-management expert and the partnership's certified public accountant (CPA).

After the court trial, the parties submitted written closing arguments. As shown below, Roger's submission requested that the district court award Keith the land in the upper square and rectangular parcels, outlined in yellow, and that the district court award Roger the land in the comparable lower parcels, outlined in red:

5



In his closing argument, Keith maintained that "it is just and equitable that the net assets of the Partnership be divided 'in kind,' rather than sold at a public sale[,]" because such an award would be "[c]onsistent with the strong interest in maintaining ownership of the land by the Sand family." Keith proposed that the district court award Roger all cattle, feed, bedding, outstanding dividends and equity amounts, and roughly $90,000 in equipment, which Keith argued would suffice for Roger's continued operation of the dairy farm. As for real property, Keith asked that the district court award Roger two triangular parcels totaling around 34 acres and worth about $479,020. According to Keith, "[t]he dairy buildings and the homestead in which Roger Sand resides are located on this land," as well as a dairy barn, two hay equipment sheds, a calf barn, a car garage, three silos, a bushel grain bin, and a calf/horse shed.

6

Keith sought the partnership's remaining equipment, asserting that he needed it to continue crop farming. And Keith requested that the district court award him all other real property and improvements, which consisted of about 201 acres of land containing "the buildings and improvements paid for by Keith Sand on which the Sand Pine Pheasants business operates." Keith explained that the buildings he sought included the clubhouse, garage, shop, machine shed, and other structures, as well as sewer and electrical connections. Keith estimated that this portion of the partnership's real property was valued at $1,296,651.

As depicted in his closing argument, Keith's proposed division of the partnership's real property is shown below:



***Findings of Fact, Conclusions of Law, and Order for Judgment***

The district court filed findings of fact, conclusions of law, and an order for judgment in May 2023, which we summarize as follows.

The district court determined that, because they "are not even on speaking terms," Roger and Keith cannot continue operating the partnership together, and thus that dissolution was warranted. Noting Roger's desire to keep running the dairy farm and Keith's intention to keep Sand Pine Pheasants in business, as well as "the strong interest of the parties in maintaining ownership of the land by the Sand family," the district court determined that "it is just and equitable that the net assets of the Partnership be divided 'in kind,' rather than sold at a public sale." The district court also found that the partnership has various debts and liabilities that require payment before distribution of the partnership's assets to the partners.

The district court ordered an equal split of all outstanding dividends and equity amounts between the parties, awarding each partner roughly $64,000. The district court awarded Roger all the partnership's cattle, feed, and bedding, and $102,150 worth of farm equipment, which the district court found sufficient for him to operate the dairy farm. The district court awarded all remaining equipment to Keith and determined the value of that equipment as $198,550. The district court determined Keith required the equipment to keep operating Sand Pine Pheasants. The district court also ordered that Keith "be allowed to retrieve all his personal tools, shelving, cabinets, toolboxes, and two air compressors."

The district court accepted Roger's proposal for dividing the partnership's real property, awarding Keith the land outlined in yellow and Roger the land outlined in red, as shown in the first image above.

Keith filed a motion for a new trial and/or amended findings of fact and conclusions of law, as well as a supporting memorandum. The district court declined to adopt Keith's amended findings, denied his motion, and entered judgment.

Keith appeals.

**DECISION**

Keith challenges the district court's judgment dissolving the partnership, contending that the district court erred by: (1) awarding an in-kind division of the partnership's real and personal property; (2) determining that there was insufficient evidence to support Keith's counterclaims against Roger; (3) finding that Keith breached the partnership agreement and his obligation of good faith and fair dealing; and (4) deciding not to grant a right of first refusal to each partner on future sales of former partnership property.

"In a case tried without a jury, the scope of review is limited to determining whether the district court's findings are clearly erroneous and whether the court erred as a matter of law." *Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 457 (Minn. App. 2001), *rev. denied* (Minn. July 24, 2001). "In an appeal from a bench trial, we do not reconcile conflicting evidence." *Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002), *rev. denied* (Minn. June 26, 2002). "When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the district court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard."

9

*Id.* (quotation omitted). "[The] district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022) (quotation omitted).

Applying the above principles, we address each of Keith's arguments in turn.

## I.  The district court did not abuse its discretion in awarding a division of the partnership's assets.

Keith first asserts that the district court's in-kind division of the partnership's assets is "inequitable and not an even split between the two equal partners," that it prejudiced him, that it is contrary to law, and that it is not supported by the trial evidence. We are not persuaded.

Minnesota partnerships are governed by the Minnesota Uniform Partnership Act of 1994, Minn. Stat. §§ 323A.0101-.1203 (2022). A partner may maintain an action against the partnership or another partner for legal or equitable relief to enforce the partner's rights under chapter 323A or the partnership agreement and may compel a dissolution and winding up of the partnership business. Minn. Stat. § 323A.0405(b). Here, Section 18 of the partnership agreement addresses post-dissolution division of assets and states:

> Upon dissolution, the partnership assets will be distributed according to the following priority:
>
> (a) Payment of all partnership debts and liabilities, except those owed to the partners, and the payment of all liquidation expenses.
> (b) Payment of all partnership debts and liabilities owed to the partners.

10

> (c) Distribution to the partners in accordance with their percentage of contribution as set forth herein of any remaining assets of the partnership.

"Actions for accounting and dissolution of a partnership are equitable actions." *Maras v. Stilinovich*, 268 N.W.2d 541, 544 (Minn. 1978); *see also* Minn. Stat. § 323A.0104 ("Unless displaced by particular provisions of this chapter, the principles of law and equity supplement this chapter."). "The district court has broad discretion in fashioning equitable remedies and is empowered to adapt its decree to the exigencies of each particular case so as to accomplish justice." *Herlache v. Rucks*, 990 N.W.2d 443, 451 (Minn. 2023) (citations and quotation omitted). "In Minnesota[,] a [district] court has the equitable power to divide the partnership property in kind so long as it is not liable for any partnership debts and can be divided without prejudice to the owners."[3] *Schoenborn v. Schoenborn*, 402 N.W.2d 212, 214-15 (Minn. App. 1987) (citing *Bagg v. Osborn*, 210 N.W. 862, 863 (Minn. 1926)) (other citation omitted). As a general principle, the district court "should exercise its powers to find the most advantageous plan which will not prejudice the rights of either party." *Maras*, 268 N.W.2d at 544.

Here, the district court found that Keith's request for "the vast majority of the real estate assets of the Partnership is not equitable, even if the Court were to order Keith Sand to pay a sum of money to Roger Sand as an equalizer payment." The district court also found that Keith's proposed distribution would "severely prejudice Roger Sand, as it would

---

[3] *Cf. Black's Law Dictionary* 1819 (11th ed. 2019) (defining a "distribution in kind" as "[a] transfer of property in its original state, such as a distribution of land instead of the proceeds of its sale").

11

make dairy farming impractical, as dairy farming requires land to operate." These findings are supported by the record. Keith asked the district court to grant him 201 acres of land, which would have left Roger with the remaining 34 acres. The record establishes that Roger's proposal was far closer to an even split. And Roger testified that the land he sought contained the farm building, the house where he lives, the adjacent fields, a shed, and a well—all property necessary for his continued operation of the family farm.

Keith also insists that the district court's division of the partnership's assets contradicted the partnership agreement and that he is prejudiced by the district court's division of the partnership's real property because the land that Roger received is of "higher quality" as "usable cropland." But analogously, when "property is partitioned in kind, the owners must take potluck, and no one owner has a preferred claim to a distinct piece of property to the exclusion of the others, and each owner takes the share allotted to him by the [court]." *Swogger v. Taylor*, 68 N.W.2d 376, 384 (Minn. 1955). Moreover, the record supports the district court's finding that "the distribution of Partnership real property" it ordered "will allow both parties to continue their respective businesses; Roger Sand can continue to run the dairy operation, and Keith Sand can continue to operate Sand Pine Pheasants." Similarly, as to the partnership's personal property, there is adequate foundation in the record for the district court's determination that "[it] is consistent with law and equity to divide up the net assets of the Partnership 'in kind' given the request of both Partners" and their "desire to continue to use the assets for their livelihoods."

Keith further contends that the "unequal distribution directed by the [district] court appears to be a backdoor method to compensate Roger Sand for the work he contributed to

12

the partnership, which is not allowed under Minnesota law." This argument is likewise unavailing. Citing Minnesota Statutes section 323A.0401(h) for the proposition that "[a] partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership[,]" the district court expressly observed that "Minnesota law prohibits re[mun]eration for services by a partner." As the district court explained, "[t]his prohibition bars Roger Sand's assertion that he should receive nearly all the Partnership assets based on his claim that he devoted more of his time to the Partnership than Keith Sand." The district court's thoughtful and reasoned analysis on this issue directly contradicts Keith's argument that the district court improperly relied on the work Roger performed in deciding how to divide the partnership's assets.

We therefore conclude that the district court's in-kind division of the partnership's assets—both real and personal property—was not against logic and the facts on record, nor is there any indication that the district court misapplied the law. Based on the district court's wide latitude to fashion an equitable remedy, we discern no abuse of discretion.

## II. The district court did not abuse its discretion in determining that Keith presented insufficient evidence to support his counterclaims.

Keith next challenges the district court's determination that he is not entitled to relief on his counterclaims arising from Roger's sale of cattle owned by the partnership, alleged retention of those profits, and alleged failure to account for those profits. Keith maintains that "[t]he findings of the trial court that it was permissible for Roger Sand to retain

13

hundreds of thousands of dollars of Partnership assets is not supported by the Partnership Agreement, equity, the record, or the applicable law." This argument is unconvincing.

The following findings by the district court are relevant to Keith's argument on this issue. Roger lacked access to the partnership checkbook and had not had such access for several years. Since approximately 2013, Keith prevented Roger from accessing partnership funds without Keith's approval. The partners had agreed that "Roger Sand was to receive $800 per month from the Partnership funds to help him pay for his personal expenses." But Keith stopped making the $800 payments to Roger after he learned that Roger was selling some of the partnership's cattle without his knowledge. Roger "did not dispute selling cattle on different occasions, but explained that he did so out of necessity, as he needed some money to live on given the fact that Keith Sand stopped paying him in 2018." Roger also used some proceeds to pay the partnership's bills because Keith refused to pay them. In addition, in past years, Eileen and Werner had sold cattle. These findings are supported by the trial record.

Keith argues that, even if Roger had the right to "unilaterally sell cull cows and bull calves, there is no basis in law that would allow him to retain all the proceeds from his sales of Partnership assets with no accurate accounting to the other Partners." Nevertheless, when asked about how Werner and Eileen handled the sales of cull cows, Keith conceded that, based on his review of past checks and bank statements, "a lot" of the proceeds from these sales "didn't get deposited into the business account." Keith therefore surmised that his parents "cashed [the checks received from cattle sales] and kept them kind of like what Roger has been doing." On top of this consistency between Roger's conduct and the

14

partnership's historical operating practices, the district court found that, although Roger "was not the best at bookkeeping," when the tax preparer requested information on the cattle sales, Roger provided the information. The record likewise supports these findings.

Moreover, the parties' CPA testified that he handled tax preparation services for the partnership, for Keith, and for Roger. The CPA stated that, while there were some years when he did not receive records about the sale of cull cows and bull calves, "the number [of those years] was pretty low." And in 2021, when Keith directed the CPA to retrieve such information from Roger, Roger provided him with the information over the phone. Based on our careful review of the record, we conclude that the district court did not abuse its discretion in determining that there was insufficient evidence to prove that Roger had presented incorrect information to the CPA or that he misappropriated partnership assets for his own gain.

Contending that it is "proper to debit the award to Roger Sand for one-half of $344,340.28," Keith points to expert testimony about the number of cull cows and bull calves that the expert expected a dairy farm to generate. But the district court heard this testimony at trial and still credited Roger's statements to the contrary. After considering the trial evidence, the district court found that Keith had not presented sufficient proof to support his counterclaims. In particular, the district court determined that there was "insufficient evidence to show that by operating in this fashion, under the circumstances presented herein," Roger violated a duty of loyalty or care or otherwise violated the partnership agreement. "We do not reweigh the evidence that was before the district court,

15

and we defer to a district court's credibility determinations." *Landmark Cmty. Bank, N.A. v. Klingelhutz*, 927 N.W.2d 748, 755 (Minn. App. 2019).

We therefore conclude that the district court did not abuse its discretion by determining that Keith presented insufficient evidence to support his counterclaims arising from the alleged misappropriation of partnership assets.[4]

### III. Assuming without deciding that the district court abused its discretion by determining that Keith breached the partnership agreement and the statutory duty of good faith and fair dealing, any such error is harmless.

Keith also asserts that the district court abused its discretion in determining that he breached the partnership agreement and the statutory obligation of good faith and fair dealing by failing to contribute to the success of the partnership and that he breached the obligation of good faith and fair dealing by seeking to buy Eileen's partnership interest. *See* Minn. Stat. § 323A.0404(d) (requiring partners to discharge their duties "consistently with the obligation of good faith and fair dealing"). But Keith does not explain how these liability determinations affected the ultimate distribution ordered by the district court. We thus conclude that, even if the district court abused its discretion in the manner Keith urges, such alleged error is harmless.

The district court's ultimate decisions on dissolution of the partnership and the division of the partnership's assets were made within the scope of the larger dissolution

---

[4] As much as Keith challenges the district court's finding that he did not present sufficient evidence to support his counterclaim alleging that Roger misappropriated and converted dividend checks, we conclude that the district court's finding is supported by the record, given that the CPA denied knowledge of Roger claiming any of the partnership's dividend checks as income.

action. Indeed, the district court correctly found that the case "was largely about the termination of the Sand Pines Dairy partnership and the distribution to Roger Sand and Keith Sand of its net assets." As discussed above, the district court had broad discretion to resolve this litigation seeking dissolution of the partnership.

"Where a decisive finding of fact is supported by sufficient evidence and is adequate to sustain the conclusions of law, it is immaterial whether some other findings are not so sustained." *Hanka v. Pogatchnik*, 276 N.W.2d 633, 636 (Minn. 1979). Here, as explained above, the district court's decisive findings relate to the dissolution of the partnership and the division of the partnership's assets. Moreover, under Minnesota Rule of Civil Procedure 61,[5] we must disregard any alleged error or defect in the district court proceedings—including an allegedly erroneous determination that Keith breached the partnership agreement and the statutory duty of good faith and fair dealing—that does not affect Keith's substantial rights. The district court did not explicitly award any monetary or equitable relief associated with Roger's claims that Keith breached his duties to the partnership, and nothing in the record suggests that the district court's determination of those claims influenced its division of the partnership's assets.

Thus, even if the district court abused its discretion by determining that Keith breached the partnership agreement and the obligation of good faith and fair dealing, such an abuse of discretion was harmless.

---

[5] "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Minn. R. Civ. P. 61.

**IV.** **The district court did not abuse its discretion by declining to award a right of first refusal to each partner on future sales of former partnership property.**

Finally, Keith argues that the district court abused its discretion by declining to amend its findings of fact to subject former partnership property "to a right of first refusal in the event either party wishes to sell or dies." Keith maintains that, in doing so, the district court violated Section 16 of the amended partnership agreement. We disagree.

Relations among and between partners are generally "governed by the partnership agreement." Minn. Stat. § 323A.0103(a). In analogously considering a contractual right of first refusal in the context of an agricultural lease, the Minnesota Supreme Court explained that it has "long recognized the right of parties to freely contract, and will enforce legal rights according to contract terms." *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 784 (Minn. 2004).

Here, Section 16 of the amended partnership agreement set forth the following right of first refusal: "No partner shall sell, assign, transfer, donate, grant a security interest in, or in any way dispose of or encumber his or her partnership interest or any part thereof, during his or her lifetime without first offering to sell said partnership interest to the remaining partner(s)." But Section 21 logically provides that the partnership agreement terminates upon, among other things, the termination of the partnership.

In other words, the terms of the partnership agreement state that its provisions are no longer effective following dissolution and there is no provision continuing a right of first refusal thereafter. As discussed earlier, no party disputes the district court's determination that the partnership required dissolution. Because the district court enforced

18

the partnership agreement according to its terms, Keith cannot persuasively rely on Section 16 to claim error in the district court's decision not to award a right of first refusal in this action. *See Dyrdal*, 689 N.W.2d at 784. We therefore conclude that the district court did not abuse its discretion by declining to amend its factual findings to grant a right of first refusal to each partner as to former partnership property.

To summarize, in dissolving the partnership and dividing the partnership's assets in kind, the district court did not abuse its "broad discretion" to fashion an equitable remedy and "to adapt its decree to the exigencies of [this] particular case so as to accomplish justice." *Herlache*, 990 N.W.2d at 451 (quotation omitted).

**Affirmed.**